180 P.3d 1276 (2008)
STATE of Washington, Respondent,
v.
Arturo R. RECUENCO, Petitioner.
No. 74964-7.
Supreme Court of Washington, En Banc.
Argued March 13, 2007.
Decided April 17, 2008.
*1277 Gregory Charles Link, Washington Appellate Project, Seattle, for Appellant.
James Morrissey Whisman, King County Prosecutor's Office, Seattle, for Respondent.
James Elliot Lobsenz, Carney Badley Spellman, Seattle, Amicus Curiae for Washington Association of Criminal Defense Lawyers.
*1278 C. JOHNSON, J.
¶ 1 This case asks us to determine whether Washington law requires a harmless error analysis where a sentencing factor, such as imposition of a firearm enhancement based on a deadly weapon finding, was not submitted to the jury.[1] The United States Supreme Court in Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), held that Blakely[2] errors can be subject to harmless error analysis. We conclude that under Washington law, harmless error analysis does not apply in these circumstances. On remand, we affirm State v. Recuenco, 154 Wash.2d 156, 110 P.3d 188 (2005), and remand to the trial court.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 On September 18, 1999, Arturo R. Recuenco was involved in an altercation with his wife and threatened her with a handgun. Based on this incident, Recuenco was charged by information with second degree assault "with a deadly weapon, to  wit: a handgun" pursuant to former RCW 9.94A.125 (1983) and former RCW 9.94A.310 (1999).[3] Defense counsel proposed a special verdict form directing the jury to make a specific finding regarding whether Recuenco was "armed with a deadly weapon at the time of the commission of the crime," and the court accepted this form. Defense counsel also requested that a definition of a "firearm" be submitted to the jury to explain the deadly weapon definition, but the prosecutor stated that that was unnecessary because no element of a firearm was included in the charged crime or enhancement. The jury, in addition to finding Recuenco guilty of second degree assault, returned a special verdict finding that Recuenco was armed with a deadly weapon during the commission of the second degree assault. The information did not contain an allegation that a firearm enhancement applied, nor did the jury return a special verdict concluding that Recuenco was armed with a firearm.
¶ 3 At sentencing, the State requested the low end of the standard sentencing range, 3 months, plus a 36-month firearm enhancement. Defense counsel argued that only a 12-month deadly weapon enhancement was appropriate because the jury had returned a special verdict with only a deadly weapon finding.[4] The trial court imposed a 36-month firearm enhancement instead of the 12-month deadly weapon enhancement charged in the information and found by the jury.
¶ 4 Recuenco appealed his conviction and sentence, arguing that he was deprived of his due process rights because a firearm enhancement was imposed despite the jury finding that he was armed with the deadly weapon. The Court of Appeals held that any possible error was harmless because the only weapon mentioned at any stage of the proceedings was a firearm. State v. Recuenco, noted at 117 Wash.App. 1079, 2003 WL 21738927, at *5.
¶ 5 The focus of our first review of Recuenco's case was on the application of Apprendi and Blakely. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The United States Supreme Court in Apprendi, held that other than a prior conviction, "any fact that increases the penalty for *1279 a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. In Blakely, the Court clarified "that the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531. Thus, based on Blakely, we reversed and vacated Recuenco's sentence on the grounds that imposing the firearm enhancement without a firearm finding by the jury violated Recuenco's Blakely Sixth Amendment rights. Recuenco, 154 Wash.2d 156, 110 P.3d 188 (hereinafter Recuenco I).
¶ 6 In our initial review, we did not consider whether the error of failing to submit the firearm finding to the jury was harmless' because we understood the federal constitution to prohibit harmless error analysis of Sixth Amendment violations under Blakely. See State v. Hughes, 154 Wash.2d 118, 110 P.3d 192 (2005), overruled in part by Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (hereinafter Recuenco II). In Recuenco II, the United States Supreme Court reversed our decision, stating that under federal law the failure to submit a sentencing factor to the jury is subject to harmless error analysis. Recuenco II, 126 S.Ct. at 2553.
¶ 7 The Supreme Court remanded the case to us to consider whether the failure to submit a sentencing factor to the jury is subject to harmless error analysis under Washington law.

ANALYSIS
¶ 8 Before embarking on our analysis, it is necessary to focus on what error occurred in this case and how the claim of error evolved. To determine where the claim of error began, the initial inquiry focuses on the information specifying the charges. The State has the authority and responsibility for bringing charges against a person. In that regard, the State possesses wide discretion to choose the charges it wants to pursue, if any.
¶ 9 Our cases have required the State to include in the charging documents the essential elements of the crime alleged. City of Auburn v. Brooke, 119 Wash.2d 623, 627, 836 P.2d 212 (1992). The essential elements rule requires a charging document allege facts supporting every element of the offense and identify the crime charged. State v. Leach, 113 Wash.2d 679, 689, 782 P.2d 552 (1989). "Elements" are the facts that the State must prove beyond a reasonable doubt to establish that the defendant committed the charged crime. State v. Johnstone, 96 Wash.App. 839, 844, 982 P.2d 119 (1999). The purpose of the essential elements rule is to provide defendants with notice of the crime charged and to allow defendants to prepare a defense. State v. Campbell, 125 Wash.2d 797, 801, 888 P.2d 1185 (1995).
¶ 10 Sentencing enhancements, such as a deadly weapon allegation, must be included in the information. In re Pers. Restraint of Bush, 95 Wash.2d 551, 554, 627 P.2d 953 (1981). When the term "`sentence enhancement'" describes an increase beyond the maximum authorized statutory sentence, it becomes the equivalent of an "`element'" of a greater offense than the one covered by the jury's guilty verdict. Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348. Contrary to the dissent's assertions, Washington law requires the State to allege in the information the crime which it seeks to establish.[5] This includes sentencing enhancements. See State v. Crawford, 159 Wash.2d 86, 94, 147 P.3d 1288 (2006) (stating that prosecutors must *1280 set forth their intent to seek enhanced penalties for the underlying crime in the information).
¶ 11 We examined a similar issue in an earlier case, State v. Theroff, 95 Wash.2d 385, 622 P.2d 1240 (1980), in which the defendant was charged by information with two counts of first degree murder. At that time, the State filed a separate notice advising the defendant that it would seek a firearm and a deadly weapon enhancement. The State subsequently amended the information by realleging the two counts of first degree murder and adding a count of second degree murder. However, the State did not file another notice of intent to seek enhanced penalties in conjunction with the amended information, and no intention to seek an enhanced penalty under any of the counts was indicated in either information. The defendant was found guilty of second degree felony murder, and by special interrogatory, the jury found petitioner was armed with a deadly weapon, a firearm, at the time of the commission of the crime. However, the State neglected to provide the defendant with notice that it intended to seek an enhanced penalty in its information. We remanded for resentencing because "[w]hen prosecutors seek enhanced penalties, notice of their intent must be set forth in the information." Theroff, 95 Wash.2d at 392, 622 P.2d 1240. Thus, unless a complaint is properly amended, once the State elects which specific charges it is pursuing and includes elements in the charging document, it is bound by that decision. We have not altered this requirement.
¶ 12 Recuenco's case is similar because it also involves a charging decision made by the State. The prosecutor chose to charge the lesser enhancement of "deadly weapon." Former RCW 9.94A.310(4)(b).[6] This provided Recuenco with notice of the charged offense and the ability to prepare a defense, as required by our state and federal constitutions.[7] Moreover, consistent with the specific charge brought, the jury was instructed on the deadly weapon enhancement and specifically found Recuenco guilty of second degree assault while armed with a deadly weapon. There is nothing erroneous about that finding.
¶ 13 Curiously, the dissent erroneously analyzes the issues in this case by discussing the lack of objection to the information and the liberal standard applicable to postverdict challenges. Dissent at 1286-88. As noted above, there is no error in the information at all; the State alleged that the defendant was armed with a deadly weapon where it could have alleged a firearm enhancement or not sought any enhancement at all. That was the choice of the State at the time it filed the information. No error occurred in the jury's findings. In fact, it was not until Recuenco was sentenced for an enhancement that was not charged nor found by the jury that any error had occurred at all. Up to that point, no basis existed for Recuenco to challenge the information, and no argument is presented to us that any defect existed in the information until the sentencing judge imposed a sentence for a crime the State never charged or asked for.
¶ 14 A difference of two years in prison exists between an enhancement for a "deadly weapon" and an enhancement for a "firearm." Specifically, a charge of second degree assault while armed with a deadly weapon under former RCW 9.94A.310(4)(b), as charged in this case, adds one mandatory year to the defendant's sentence, but a charge of second degree assault while armed with a firearm under RCW 9.94A.310(3)(b) adds three years to the defendant's sentence. The State opted to charge the lesser enhancement of "deadly weapon."
¶ 15 To remove any doubt about what the State was seeking in this case, a review of the record answers any question about whether the error occurred. After the jury returned its verdict and in response to Recuenco's motion to vacate, the prosecutor informed the court: "`[T]he method under *1281 which the state is alleging and the jury found the assault[] committed was by use of a deadly weapon.'" Recuenco I, 154 Wash.2d at 160, 110 P.3d 188 (quoting report of proceedings). The prosecutor went on to clarify, "`in the crime charged and the enhancement the state alleged, there is no elements [sic] of a firearm. The element is assault with a deadly weapon.'" Recuenco I, 154 Wash.2d at 160, 110 P.3d 188 (quoting report of proceedings). The record is clear.
¶ 16 The dissent appears to argue that because the only deadly weapon discussed at trial was a handgun, it was appropriate to ask for the firearm enhancement at sentencing rather than the charged and convicted deadly weapon enhancement. The dissent overlooks here that in order to prove a firearm enhancement, the State must introduce facts upon which the jury could find beyond a reasonable doubt the weapon in question falls under the definition of a "firearm:" "a weapon or device from which a projectile may be fired by an explosive such as gunpowder." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.10.01 (Supp.2005) (WPIC). We have held that a jury must be presented with sufficient evidence to find a firearm operable under this definition in order to uphold the enhancement. State v. Pam, 98 Wash.2d 748, 754-55, 659 P.2d 454 (1983), overruled in part on other grounds by State v. Brown, 111 Wash.2d 124, 761 P.2d 588 (1988).
¶ 17 Recuenco argues that "there is no procedure by which a jury could have returned a constitutionally sufficient verdict supporting a firearm enhancement in [his] case." Suppl. Br. of Pet'r on Remand at 16. However, Recuenco is not correct; a procedure does in fact exist. Under former RCW 9.94A.125 and former RCW 9.94A.310, the jury could have been instructed to make a firearm finding, as an examination of these statutes makes clear.
¶ 18 As originally enacted, the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, did not establish a discrete firearm enhancement. Instead, "firearm" was included in the definition of a "deadly weapon." Former RCW 9.94A.125; former RCW 9.94A.310. The deadly weapon enhancement provision mandated that specific additional times "`be added to the presumptive sentence if the offender or an accomplice was armed with a deadly weapon.'" State v. Silva-Baltazar, 125 Wash.2d 472, 481, 886 P.2d 138 (1994) (emphasis omitted) (quoting former RCW 9.94A.310(3) (1994)). Operating in conjunction with the SRA's deadly weapon enhancement provision, former RCW 9.94A.125 provided:
In a criminal case where there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime.
For purposes of this section . . . [t]he following instruments are included in the term deadly weapon: . . . pistol, revolver, or any other firearm.
(Emphasis added.)
¶ 19 The hard time for armed crime act of 1995 (Hard Time Act) removed "firearm" from the definition of "deadly weapon." LAWS OF 1995, ch. 129, § 2. The Hard Time Act "`split the previous deadly weapon enhancement into separate enhancements for firearms and for other deadly weapons.'" State v. Brown, 139 Wash.2d 20, 25, 983 P.2d 608 (1999) (quoting STATE OF WASHINGTON SENTENCING GUIDELINES COMM'N, ADULT SENTENCING GUIDELINES MANUAL cmt. at II-67 (1997)); see also former RCW 9.94A.310(3)(b), (4)(b). Former RCW 9.94A.125, the statute authorizing a special verdict finding on a deadly weapon, was not amended to reflect the changes made by the Hard Time Act.
¶ 20 We disagree with Recuenco's argument that the legislature has "fail[ed] to create *1282 a statutory procedure by which a jury could find a firearm special verdict preclud[ing] the imposition of the firearm enhancements prescribed in [former] RCW 9.94A.310(3)." Suppl. Br. of Pet'r on Remand at 10. Former RCW 9.94A.125 expressly directs that the jury be asked by special verdict whether a defendant was armed with a deadly weapon and includes firearms within the definition of "deadly weapon." Washington Practice recognizes former RCW 9.94A.125 to authorize putting the firearm enhancement question to the jury in the form of a special verdict. 11 WPIC 2.10.01. The WPIC expressly provides a firearm sentence enhancement instruction for use "when there is a special allegation that the defendant was armed with a firearm at the time of the commission of the crime pursuant to RCW 9.94A.533(3)." 11 WPIC 2.10.01, note on use.
¶ 21 This court has accepted the use of firearm special verdicts without remark. See, e.g., State v. Eckenrode, 159 Wash.2d 488, 150 P.3d 1116 (2007) (considering whether evidence presented was sufficient to uphold the jury's special verdict finding that the defendant was armed with a firearm); State v. Barnes, 153 Wash.2d 378, 381-83, 103 P.3d 1219 (2005) (noting without comment the jury's firearm special verdict finding). We hold that a procedure did and does exist whereby the jury can be asked to make a firearm finding.
¶ 22 In this case, no firearm instruction was given to the jury pursuant to WPIC 2.10.01. The jury was not given facts supporting the firearm enhancement nor given instructions to determine if it was applicable in this case. The only instruction given to the jury regarding sentencing enhancements was the special verdict for a deadly weapon. WPIC 2.06. It was only after the jury's verdict, at Recuenco's sentencing, that the prosecutor requested the three-year mandatory enhancement for use of a firearm. The sentencing judge then committed error by imposing a sentence outside the judge's authority, a sentence that was not authorized by the jury.
¶ 23 Our state constitution provides that "[t]he right of trial by jury shall remain inviolate." CONST. ART. I, § 21. Our prior cases have found this language indicates that our state constitution does, in some circumstances, provide greater protection for jury trials than the federal constitution. State v. Smith, 150 Wash.2d 135, 151, 75 P.3d 934 (2003) (stating that textual differences between the federal and state constitutions indicate the general importance of the right to jury trial in the Washington Constitution); see also City of Pasco v. Mace, 98 Wash.2d 87, 99, 653 P.2d 618 (1982) (noting that "our state constitution [is] more extensive than that which was protected by the federal constitution when it was adopted in 1789"). In this case, Recuenco had a right to have a jury determine beyond a reasonable doubt if he was guilty of the crime and sentencing enhancement charged. Without a jury determination that he was armed with a "firearm," the trial court lacked authority to sentence Recuenco for the additional two years that correspond with the greater enhancement. Further, Recuenco lacked any notice that he could be sentenced under the firearm enhancement.
¶ 24 An accused has a constitutionally protected right to be informed of the criminal charge against him, so he will be able to prepare and mount a defense at trial. State v. McCarty, 140 Wash.2d 420, 425, 998 P.2d 296 (2000). In McCarty, we held that even under the liberal construction applicable to postverdict challenges, an information is constitutionally deficient where it omits a necessary element of the crime. Although McCarty's charging document stated the crime was conspiracy to deliver drugs, it failed to allege the involvement of more than two people and thus did not give the defendant actual notice of the crime charged. The Court of Appeals had determined that there was notice to McCarty because he was made aware of the State's theory from the start of the case during opening arguments and during closing arguments, and because it was included in the instructions to the jury. However, to ensure due process, the notice of the charge on which a defendant will be tried must be logically given at some point prior to the opening statements of the trial. McCarty, 140 Wash.2d at 427, 998 P.2d 296 (citing *1283 State v. Vangerpen, 125 Wash.2d 782, 888 P.2d 1177 (1995)).
¶ 25 Not only was Recuenco not informed of the charge of assault with a firearm before opening statements, he was not given notice until sentencing. Recuenco therefore lacked any ability to prepare an adequate defense nor had any reason or opportunity to challenge the information before that time. There was no error in the charging decision, the information, or the jury determination. No harmless error analysis can apply to a case where the State specifically (and properly) adds an enhancement allegation and asks the jury to make the specific finding supporting the enhancement sought, and where the jury returns the verdict. In this case, the error occurred during the sentencing proceedings when the sentencing judge exceeded the authority issued to the court by the jury's determination.
¶ 26 In Recuenco II, the United States Supreme Court based its analysis on the understanding that the "error" was an error of judicial fact finding because that is how we previously treated it in Recuenco I. Recuenco II, 126 S.Ct. at 2552 n. 3. From that understanding, the Court stated Recuenco's case was indistinguishable from Neder, a case in which the Court held that omission of an element from jury instructions is subject to harmless error analysis. Recuenco II, 126 S.Ct. at 2552; Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). However, this case is distinguishable from Neder. In Neder, the defendant received notice because he was properly charged. In contrast, Recuenco was charged with second degree assault with a deadly weapon, a special verdict form was submitted regarding a deadly weapon finding, and the jury found guilt as to the properly submitted sentencing enhancement of "deadly weapon." We recognize here that the harmless error doctrine simply does not apply because no error occurred in the jury's determination of guilt. The charge brought by the State, the jury instructions, and the jury's explicit findings left no fundamental "gap" for the trial court to fill.
¶ 27 The error in this case occurred when the trial judge imposed a sentence enhancement for something the State did not ask for and the jury did not find. The trial court simply exceeded its authority in imposing a sentence not authorized by the charges.

CONCLUSION
¶ 28 Recuenco was charged with assault with a deadly weapon enhancement, and he was convicted of assault with a deadly weapon enhancement, but he was erroneously sentenced with a firearm enhancement. We conclude it can never be harmless to sentence someone for a crime not charged, not sought at trial, and not found by a jury. In this situation, harmless error analysis does not apply. Therefore, we vacate the firearm sentence and remand for correction of the sentence.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, SUSAN OWENS and BARBARA A. MADSEN, Justices.
FAIRHURST, J. (dissenting).
¶ 29 Arturo R. Recuenco's sentence included a firearm enhancement although the jury was asked and found beyond a reasonable doubt only that he had been armed with a deadly weapon. It is undisputed that imposing a firearm enhancement based on a deadly weapon finding violated Recuenco's Sixth and Fourteenth Amendment jury trial right as defined by Apprendi[1] and Blakely.[2] Under federal law, "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury," is subject to harmless *1284 error analysis. Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 2553, 165 L.Ed.2d 466 (2006) (Recuenco II). The central question in this case is whether harmless error analysis applies under Washington law and, if so, whether the error in this case was harmless.[3] I would hold that under Washington law the failure to submit a sentencing factor to a jury is subject to harmless error analysis and, in this case, entry of the firearm enhancement based on a deadly weapon finding was harmless. I would also hold that because Recuenco challenged the charging document for the first time after the jury issued its verdict, the charging document was sufficient under the more liberal standard of review that applies to postverdict challenges to charging documents.

I. HARMLESS ERROR ANALYSIS
A. The failure to submit a sentencing factor to a jury is subject to harmless error analysis under Washington law
¶ 30 The failure to submit a sentencing factor to a jury is subject to harmless error analysis because such analysis is not prohibited by the state jury trial right and is dictated by controlling precedent. When presented with claims under the state jury trial right,[4] we conduct a focused examination of the specific right asserted as it existed at the time that the state constitution was adopted.[5]State v. Hobble, 126 Wash.2d 283, 300, 892 P.2d 85 (1995).
¶ 31 In Washington, the practice of applying harmless error analysis predates statehood. The Territory of Washington was governed by the Code of 1881, which provided, with respect to appellate procedure, that "[o]n hearing of writs of error, the supreme court . . . shall give judgment without regard to technical errors or defects, or exceptions which do not affect the substantial rights of the defendant." Code of 1881, ch. XCI, § 1147. In cases contemporaneous with the 1889 enactment of the Washington Constitution, this court routinely applied harmless error analysis to instructional errors involving elements of crimes. McClaine v. Territory, 1 Wash. 345, 351-53, 25 P. 453 (1890) (noting that a jury instruction that misstated an element of a crime "might possibly be overlooked" if the "instruction [was] cured or explained by any other instruction" and considering whether an insufficient instruction would mislead the jury); State v. Conahan, 10 Wash. 268, 268-69, 38 P. 996 (1894) (affirming a conviction despite an erroneous jury instruction regarding a burden of proof because the defendant would have been convicted regardless of whether the correct instruction was given). In State v. Courtemarch, *1285 11 Wash. 446, 39 P. 955 (1895), this court expressly used the language now associated with harmless error analysis. With respect to an instructional error, this court stated, "[i]t was at most merely harmless error not tending to the prejudice of the substantial rights of the defendant." Id. at 450, 39 P. 955 (internal quotation marks omitted).
¶ 32 Despite the pervasive use of harmless error analysis around the time of the constitution's enactment, Recuenco argues that per se reversal is warranted because the state jury trial right entitles the accused to "the right to have the jury pass upon every substantive fact going to the question of his guilt or innocence." State v. Strasburg, 60 Wash. 106, 118, 110 P. 1020 (1910). Strasburg does not support per se reversal. The Strasburg court held that due process and the jury trial right guaranteed a criminal defendant the right to present an insanity defense, rendering a statute to the contrary unconstitutional. Id. at 115, 121. Strasburg did not address what the jury trial right guaranteed with respect to the failure to obtain a jury finding on an element of the charged crime, and, thus, the court did not have an opportunity to apply harmless error analysis.
¶ 33 As the Code of 1881, McClaine, Conahan, and Courtemarch demonstrate, the state constitution's jury trial right does not prohibit applying harmless error analysis to the failure to submit an element to the jury. Correspondingly, the jury trial right does not prohibit applying harmless error analysis to the analogous error of the failure to submit a sentencing factor to the jury.
¶ 34 Controlling precedent dictates that the failure to submit a sentencing factor to a jury is subject to harmless error analysis.[6] Our 2002 decision in State v. Brown plainly and conclusively announced the rule governing applicability of harmless error analysis to the failure to submit an element and, by extension, a sentencing factor to the jury. 147 Wash.2d 330, 58 P.3d 889 (2002) (considering faulty accomplice liability instruction). Brown held that "an erroneous jury instruction that omits or misstates an element of a charged crime is subject to harmless error analysis to determine whether the error has not relieved the State of its burden to prove each element of the case." Id. at 344, 58 P.3d 889. The Brown court explained that while "[a]n instruction that relieves the State of its burden to prove every element of a crime requires automatic reversal . . . not every omission or misstatement in a jury instruction relieves the State of its burden." Id. at 339, 58 P.3d 889 (footnote omitted).
¶ 35 Contrary to Recuenco's assertion, State v. Jackson, 137 Wash.2d 712, 976 P.2d 1229 (1999), does not support a rule of automatic reversal. Jackson held that an instructional error that improperly defined the elements of accomplice liability constituted reversible error. Id. at 715, 976 P.2d 1229. In discussing harmless error, the Jackson court recited our oft-quoted statement that "`[t]he State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld. It is reversible error to instruct the jury in a manner that would relieve the State of this burden.'" Id. at 727, 976 P.2d 1229 (quoting State v. Byrd, 125 Wash.2d 707, 713-14, 887 P.2d 396 (1995)). The Jackson court concluded that the instructional error at issue was "not susceptible to harmless error analysis." Id. Recuenco reads "not susceptible to" to mean not subject to harmless error analysis, in other words, requiring automatic reversal.
¶ 36 "Susceptible to," without context, is ambiguous as to whether the Jackson court was determining if harmless error analysis were applicable or what result was produced by that analysis. However, the court unmistakably reached its determination that the error required reversal by applying harmless *1286 error analysis. The court engaged in a thorough examination of the particular circumstances presented in the case, clearly considering whether, in light of those circumstances, the error in the specific instruction was harmless or prejudicial.
¶ 37 The Jackson court would not have applied harmless error analysis if it were following a rule that any error in instructing the jury on an element of the crime is per se reversible error. Therefore, by stating that the error was "not susceptible to harmless error analysis," the court must have meant that it had concluded, by applying harmless error analysis to the facts before it, that the error at issue was not harmless. Jackson does not support Recuenco's proposed rule that instructional errors resulting in the failure to submit an element, or a sentencing factor, to the jury are per se reversible error.
¶ 38 Recuenco's reliance on State v. Cronin, 142 Wash.2d 568, 14 P.3d 752 (2000), is similarly misplaced. Like Jackson, Cronin held that erroneous instructions improperly defining accomplice liability constituted reversible error. Id. at 570, 14 P.3d 752. The Cronin court "first observe[d] that the State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld" and "note[d] that a conviction cannot stand if the jury was instructed in a manner that would relieve the State of this burden." Id. at 579-80, 14 P.3d 752. Acknowledging that the instructions given were erroneous, Cronin "turn[ed] to the question of whether the instructional error in these cases can be labeled harmless." Id. at 580, 14 P.3d 752 (emphasis added). Thus, the Cronin court unmistakably applied harmless error analysis to the failure to properly instruct on an element of the crime.
¶ 39 In summary, the Washington Constitution's jury trial right preserves the right as it existed in the territory at the time the constitution was adopted. At that time, it was the established practice in Washington to conduct harmless error analysis on instructional errors in criminal trials, including errors that resulted in the failure to submit an element of the crime to the jury. Our controlling precedent, as confirmed in Brown, dictates the same result. Therefore, I would hold that the failure to submit a sentencing factor to the jury is subject to harmless error analysis under Washington law.
B. The error in Recuenco's case was harmless
¶ 40 Having established that harmless error analysis applies to the failure to submit a sentencing factor to the jury, I proceed to the question of whether the error in this particular case  failing to obtain a firearm finding by the jury  was harmless. I agree with the majority's determination that a procedure existed by which a jury could have been asked to make a firearm finding. Majority at 1280-81. However, I believe that beyond a reasonable doubt the error did not contribute to the verdict because a firearm  the .380 caliber semiautomatic handgun  was acknowledged to be the only deadly weapon involved in the case. I would therefore hold that the error in Recuenco's case was harmless.
¶ 41 In Brown, we announced that "a constitutional error is harmless: `[if] it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" 147 Wash.2d at 341, 58 P.3d 889 (internal quotation marks omitted) (quoting Neder v. United States, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). It is undisputed that at Recuenco's trial the only deadly weapon about which evidence was introduced was the firearm. Defense counsel acknowledged as much in the jury instructions conference following the close of evidence, saving "the deadly weapon in question is the firearm." Verbatim Report of Proceedings (VRP) (Jan. 24, 2000) at 799. The court agreed, saying, "no other weapons are the subject of this trial, other than a firearm." Id. at 810. The court then instructed the jury that "[f]or the purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon. . . . A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded." Clerk's Papers (CP) at 231 (Instruction 18). The jury returned a special verdict finding that Recuenco *1287 had been armed with a deadly weapon. CP at 237.
¶ 42 Based on this record, I can confidently determine that, although the jury did not explicitly find that Recuenco was armed with a firearm based on the evidence and the jury instruction, it would have so found if such a finding had been requested. As the Court of Appeals found, "any possible error was harmless beyond a reasonable doubt" because the only weapon mentioned at any stage of the proceedings was the firearm. State v. Recuenco, noted at 117 Wash.App. 1079, 2003 WL 21738927, at *5. It is beyond a reasonable doubt that, in Recuenco's case, the error of failing to submit the firearm finding to the jury did not contribute to the verdict obtained. Therefore, I would hold that the error was harmless.[7]

II. CHARGING ERROR
¶ 43 The majority's opinion appears to at least be partially based on the premise that the trial court "exceeded its authority in imposing a sentence not authorized by the charges." Majority at 1283. I respectfully disagree. The information accused Recuenco of "being armed with a deadly weapon, to  wit: a handgun, under the authority of [former] RCW 9.94A.125 [1983] and [former] 9.94A.310 [1999]." CP at 159. This information, liberally construed, is sufficient to pass the test for postverdict challenges to information because it includes the necessary fact of being armed with a handgun.
¶ 44 The majority correctly lays out the law regarding the essential elements rule for preverdict challenges to charging documents. Majority at 1279. However, the majority fails to account for the timing of Recuenco's objection to the firearm enhancement. Recuenco contested the firearm enhancement at the sentencing hearing after the jury verdict on the basis that the prosecution failed to allege the use of a firearm and the jury did not return a firearm special verdict. A different, more liberal test applies to postverdict challenges to charging documents. State v. Kjorsvik, 117 Wash.2d 93, 102, 812 P.2d 86 (1991).
¶ 45 When an information is challenged prior to a verdict, "the language of the charging document is strictly construed to determine whether all elements are included, and the defendant need not show he was prejudiced by the defect." State v. Tinker, 155 Wash.2d 219, 221, 118 P.3d 885 (2005). In contrast, "[c]harging documents which are not challenged until after the verdict will be more liberally construed in favor of validity than those challenged before or during trial." Kjorsvik, 117 Wash.2d at 102, 812 P.2d 86. The more liberal two-prong test for postverdict challenges is "`(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?'" State v. Goodman, 150 Wash.2d 774, 788, 83 P.3d 410 (2004) (quoting Kjorsvik, 117 Wash.2d at 105-06, 812 P.2d 86). Under this test, the court may "fairly infer the apparent missing element from the charging document's language."[8]Id.
*1288 ¶ 46 Under this standard, I would find that the charging information, liberally construed, meets the first prong of the Kjorsvik test.[9] 117 Wash.2d at 105, 812 P.2d 86. Recuenco was charged with "being armed with a deadly weapon, to-wit: a handgun, under the authority of [former] RCW 9.94A.125 and [former] 9.94A.310." CP at 159. On its face, this charging document refers to a "handgun" and two statutes. Former RCW 9.94A.125 authorizes the use of a special verdict form for both firearm and deadly weapon enhancements. Former RCW 9.94A.310(3) and (4) provide statutory authority for both firearm and deadly weapon enhancements. For assault in the second degree, a class B felony, "if the offender . . . was armed with a firearm" a three year mandatory firearm enhancement is added to the presumptive sentence. Former RCW 9.94A.310(3)(b). "[I]f the offender . . . was armed with a deadly weapon . . . other than a firearm" a one year mandatory deadly weapon enhancement is added. Former RCW 9.94A.310(4)(b). Thus, contrary to the majority's implication, Recuenco was not specifically charged with a deadly weapon enhancement. Majority at 1280 (asserting that "[t]he prosecutor chose to charge the lesser enhancement of `deadly weapon.'"). Recuenco cannot argue that the information, although unartfully phrased, was insufficient because it provided notice of the necessary facts (being armed with a firearm).[10]
¶ 47 The second test is whether Recuenco can show that he was actually prejudiced by the unartful language. Kjorsvik, 117 Wash.2d at 106, 812 P.2d 86. In making this determination, the court "may look beyond the face of the charging document to determine if the accused actually received notice of the charges he or she must have been prepared to defend against." Id. At trial, following the parties' presentations of evidence, the court discussed jury instructions with counsel. Defense counsel acknowledged that "the deadly weapon in question is the firearm" but debated with the court over which deadly weapon definition should be given to the jury. VRP (Jan. 24, 2000) at 799. The court concluded that it would give "only the more simplified version, since no other weapons are the subject of this trial, other than a firearm."[11]Id. at 810. The court instructed the jury, "[t]he term `deadly weapon' includes any firearm, whether loaded or not."[12] CP at 222 (Instruction 9). It *1289 was undisputed at trial that the firearm was the only deadly weapon involved in the assault and after the verdict, at the sentencing hearing, Recuenco's counsel clearly acknowledged that "the allegation and the basis on which this case was tried was under the theory of firearm." VRP (Feb. 24, 2000) at 902. Knowing that the case was tried on the theory of a firearm, Recuenco had actual notice that the State may seek a firearm enhancement. Furthermore, he has failed to show that he was prejudiced by the unartful language. Thus, I would hold that the information passes the Kjorsvik test.

III. CONCLUSION
¶ 48 I would hold that under Washington law the failure to submit a sentencing factor to the jury is subject to harmless error analysis. Furthermore, I would hold that, in Recuenco's case, the entry of a firearm enhancement based on a deadly weapon finding was harmless. Finally, I would hold that the charging document sufficiently informed Recuenco that the State might seek a firearm sentence enhancement. Thus, I would remand to the trial court for it to ensure that the record reflects that Recuenco was properly sentenced to a 36-month firearm enhancement.
WE CONCUR: BOBBE J. BRIDGE, J. Pro Tern., JAMES M. JOHNSON and TOM CHAMBERS, Justices.
NOTES
[1] The parties also briefed the issue of mootness pursuant to Arturo Recuenco's August 2006 request that the case be dismissed as moot. We decline Recuenco's request to moot the case. Both Recuenco and the State have legally cognizable interests in the outcome of this matter. Further, although we cannot provide Recuenco with relief in the form of less confinement because he has already completed his sentence, the same relief, reversal of his conviction and remand for entry of a conviction of second degree assault with a deadly weapon, is available to Recuenco today as was available when he originally petitioned this court for review in 2003.
[2] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[3] Former RCW 9.94A.125, recodified as RCW 9.94A.602 and former RCW 9.94A.310, recodified as RCW 9.94A.510.
[4] For assault in the second degree, a class B felony, the firearm enhancement is three mandatory years, while a deadly weapon enhancement is one mandatory year. Former RCW 9.94A.310(3)(b), (4)(b).
[5] Presumably, the dissent would uphold a firearm enhancement even where the State failed to allege any and where the jury was not asked to make any finding. Such a result is contrary to our cases which define the State's constitutional duty. See State v. Campbell, 125 Wash.2d 797, 888 P.2d 1185 (1995) (due process doctrines and federal and state constitutions require a charging document to give notice of the nature and cause of an accusation), and those cases discussing the state constitutional guaranty of the right to a jury trial. See, e.g., State v. Kirkman, 159 Wash.2d 918, 938, 155 P.3d 125 (2007) (affirming our "right of jury trial[] `is no mere procedural formality, but a fundamental reservation of power in our constitutional structure'" (quoting State v. Evans, 154 Wash.2d 438, 445, 114 P.3d 627 (2005))).
[6] Recodified as RCW 9.94A.533(4)(b).
[7] "In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation. . . ." U.S. Const, amend. VI. "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him. . . ." Wash. Const, art. I, § 22.
[1] In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."
[2] In Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court clarified that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."
[3] In State v. Recuenco, 154 Wash.2d 156, 162, 110 P.3d 188 (2005) (Recuenco I), we determined that the imposition of a firearm enhancement without an explicit firearm finding by the jury violates the Sixth Amendment. We also held that such an error could never be deemed harmless under the federal constitution. Id. at 164, 110 P.3d 188; see State v. Hughes, 154 Wash.2d 118, 148, 110 P.3d 192 (2005), overruled in part by Recuenco II, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466. The United States Supreme Court reversed on the harmless error analysis issue and remanded this case for further proceedings. Recuenco II, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466. As the majority notes, "[t]he Supreme Court remanded the case to us to consider whether the failure to submit a sentencing factor to the jury is subject to harmless error analysis under Washington law." Majority at 1279.
[4] The Washington Constitution's jury trial right is comprised of two provisions. Article I, section 21 provides that "[t]he right of trial by jury shall remain inviolate." Article I, section 22 provides that "[i]n criminal prosecutions the accused shall have the right to . . . trial by an impartial jury." "[T]he right to trial by jury which was kept `inviolate' by our state constitution [is] more extensive than that which was protected by the federal constitution when it was adopted in 1789." Pasco v. Mace, 98 Wash.2d 87, 99, 653 P.2d 618 (1982) (quoting Wash. Const, art. I, § 21). The state jury trial right "preserves the right as it existed at common law in the territory at the time of [our constitution's] adoption." Id. at 96, 653 P.2d 618; see also State ex rel. Mullan v. Doherty, 16 Wash. 382, 384-85, 47 P. 958 (1897).
[5] I agree with the United States Supreme Court that, for the purposes of harmless error analysis, the failure to submit an element to the jury and the failure to submit a sentencing factor to the jury are analogous. Recuenco II, 126 S.Ct. at 2553. Thus, because sentencing factors did not exist at the time the state constitution was adopted, I focus on whether harmless error analysis was applied to the analogous situation of an instructional error that results in the failure to submit an element of a crime to a jury.
[6] Our decision in State v. Thomas, 150 Wash.2d 821, 83 P.3d 970 (2004), merits mention. Thomas addressed both the erroneous "to convict" instructions given in underlying criminal convictions and the finding by the' court of aggravating circumstances supporting the death penalty. The Thomas court applied harmless error analysis to, and deemed harmless, the errors in the "to convict" instructions. Id. at 845-48, 83 P.3d 970. However, the court concluded that Apprendi and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), precluded applying harmless error analysis to the finding of aggravated circumstances by the court. Thomas, 150 Wash.2d at 849-50, 83 P.3d 970. This conclusion was corrected by Recuenco II.
[7] While the majority states harmless error analysis does not apply, it is unclear from the opinion when the majority believes harmless error does not apply. For example, the majority's opening paragraph seems to suggest that harmless error analysis does not apply to the failure to submit a sentencing factor to a jury. Majority at 1278 ("harmless error does not apply in these circumstances," these circumstances being "where a sentencing factor . . . was not submitted to the jury"). But the majority also says Recuenco lacked any notice that he could be sentenced under the firearm enhancement. Id. at 1282. The majority concludes, "it can never be harmless to sentence someone for a crime not charged, not sought at trial, and not found by a jury. In this situation, harmless error analysis does not apply." Id. at 1283. These statements provide no guidance for the future because it is unclear when, if ever, harmless error analysis applies.
[8] This more liberal test was adopted to discourage "`sandbagging,'" referring to instances where a defendant "recogniz[es] a defective charging document and rais[es] the issue for the first time on appeal, when a challenge at the trial level would have resulted in an amended charge." Goodman, 150 Wash.2d at 787 n. 9, 83 P.3d 410 (citing Kjorsvik, 117 Wash.2d at 103 & n. 19, 812 P.2d 86 (citing 2 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 19.2, at 442 & n. 36 (1984))). Under CrR 2.1(d), an information may be amended "at any time before verdict or finding if substantial rights of the defendant are not prejudiced." "[T]he State may not amend a criminal charging document to charge a different crime after the State has rested its case unless the amended charge is a lesser degree of the same charge or a lesser included offense." State v. Dallas, 126 Wash.2d 324, 327, 892 P.2d 1082 (1995). The State cannot amend a charging document after a jury has issued a verdict and the case is in the sentencing phase. Thus, although our previous cases have applied the more liberal test only to challenges brought on appeal, see, e.g., State v. Williams, 162 Wash.2d 177, 170 P.3d 30 (2007) (challenge first raised on appeal); Goodman, 150 Wash.2d 774, 83 P.3d 410 (challenge first raised on appeal); Kjorsvik, 117 Wash.2d 93, 812 P.2d 86 (challenge first raised on appeal), the underlying reasons for adopting a more liberal test for challenging an information applies equally to charges mounted during the sentencing phase because at that point the State is precluded from amending the information. Thus, the more liberal test applies to challenges to charging documents raised for the first time during a sentencing hearing.
[9] I recognize that Recuenco did not have an opportunity to object to the information before the jury returned its verdict. Although application of the Kjorsvik test may seem harsh in this case, I believe that we must follow the analysis set forth in our prior case law. This test, which takes into account notice to the defendant and any resulting prejudice, adequately accounts for a defendant's right of due process.
[10] A charging document is not required to use the exact words of the statute defining a particular crime. Kjorsvik, 117 Wash.2d at 108, 812 P.2d 86. Instead, the question is whether "the words used would reasonably apprise an accused of the elements of the crime charged. Words in a charging document are read as a whole, construed according to common sense, and include facts which are necessarily implied." Id. at 109, 812 P.2d 86. A "handgun" is defined as "a firearm held and fired with one hand." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1027 (2002) (emphasis added).
[11] The court explained, "the WPIC [Washington Practice: Washington Pattern Jury Instructions: Criminal] comments instruct that if the only weapon involved is a firearm that the simplified definition of deadly weapon should be used." VRP (Jan. 24, 2000) at 810.
[12] On the special verdict, the court instructed, "the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime of Assault In the Second Degree. . . . A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded." CP at 231 (Instruction 18).