IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33790-1-III |
| | ) | |
| Respondent / | ) | |
| Cross Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| RIGOBERTO IVAN VAZQUEZ, | ) | |
| | ) | |
| Appellant / | ) | |
| Cross Respondent. | ) | |

PENNELL, J. —The parties cross appeal the trial court's split decision on whether to impose firearm enhancements related to Rigoberto Vazquez's three felony convictions. We agree with the trial court that there was no constitutional impediment to imposing the enhancements on Mr. Vazquez's two assault convictions and, as a matter of statutory interpretation, the enhancement does not apply to Mr. Vazquez's unranked riot while armed conviction. We therefore affirm.

No. 33790-1-III
*State v. Vazquez*

## BACKGROUND

Mr. Vazquez was charged with three felonies:[1] two counts of first degree assault, and one count of riot while armed.[2] A firearm enhancement, RCW 9.94A.533(3), was included on each of these counts.

Although charged with firearm enhancements, the jury was not instructed on such. Instead, the jury was provided the following deadly weapon instruction:[3]

> For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime in count [one, two, or three].
>
> A person is armed with a deadly weapon if, at the time of the commission of the crime, the weapon is easily accessible and readily available for offensive or defensive use. The State must prove beyond a reasonable doubt that there was a connection between the weapon and the defendant or an accomplice. The State must also prove beyond a reasonable doubt that there was a connection between the weapon and the crime. In determining whether these connections existed, you should consider, among other factors, the nature of the crime and the circumstances surrounding the commission of the crime, including the location of the weapon at the time of the crime.
>
> If one participant to a crime is armed with a deadly weapon, all accomplices to that participant are deemed to be so armed, even if only one deadly weapon is involved.

---

[1] Mr. Vazquez was also charged with one misdemeanor count of reckless endangerment. That count is not relevant to this appeal. The jury's verdict reduced the assault charges to assault in the second degree.

[2] The crime of riot is now referred to as criminal mischief. RCW 9A.84.010; *see also* LAWS OF 2013, ch. 20, § 1. For consistency, we will refer to riot while armed.

[3] Identical instructions were given for each of Mr. Vazquez's three felony counts.

2

A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded.

Clerk's Papers (CP) at 313-15. None of the jury instructions defined the meaning of a firearm under RCW 9.41.010(9). The jury was only instructed that a firearm is considered a deadly weapon.

Unlike the instructions, the special verdict forms conformed to the charging document and inquired as to whether Mr. Vazquez was armed with a "firearm" at the time of his offense conduct. CP at 332-34. The jury found he was. It returned special firearm verdicts related to each of Mr. Vazquez's three felony convictions.

At sentencing, Mr. Vazquez raised two issues regarding his firearm enhancements. First, Mr. Vazquez argued the firearm enhancements could not be imposed on any of his three felony convictions. Because the instructions referred to a deadly weapon and the special verdict forms referred to a firearm, Mr. Vazquez argued no firearm enhancement could be imposed. The State did not concede error, but argued that if there was error it was harmless. The trial court agreed with the State, found that any error was harmless, and imposed the firearm enhancements on the second degree assault charges. Mr. Vazquez's second argument was specific to his riot while armed conviction. Citing *State v. Soto*, 177 Wn. App. 706, 309 P.3d 596 (2013), Mr. Vazquez argued that because

3

riot while armed is an unranked felony, it cannot be assessed an enhancement. The trial court agreed and struck the associated firearm enhancement.

## ANALYSIS

In cross appeals to this court, the parties each raise the sentencing arguments they lost in the trial court. The arguments are legal in nature and involve de novo review. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014) (statutory interpretation); *State v. Bainard*, 148 Wn. App. 93, 101, 199 P.3d 460 (2009) (constitutional law).

*Mr. Vazquez's appeal: the lack of a firearm enhancement instruction*

As the parties agree, the court's instructions failed to inform the jurors of the elements required for a firearm enhancement under RCW 9.94A.533(3). Instead, the jury was instructed on the elements of a deadly weapon enhancement under RCW 9.94A.533(4). This was a significant error. Under RCW 9.94A.533(3)(b), a consecutive three-year sentence must be imposed whenever a jury authorizes a firearm enhancement in connection with a qualifying felony offense. In contrast, a deadly weapon enhancement under RCW 9.94A.533(4)(b) carries only a one-year consecutive term. Although a firearm is considered a deadly weapon in some contexts, RCW 9.94A.825, in order to impose a firearm enhancement the jury must be given sufficient evidence to find the defendant was armed with a firearm as defined in RCW 9.41.010(9).

RCW 9.94A.533(3); *see also State v. Recuenco*, 163 Wn.2d 428, 437, 180 P.3d 1276 (2008) ("jury must be presented with sufficient evidence to find a firearm operable under this definition in order to uphold the enhancement").

Mr. Vazquez claims the court's erroneous instructions prohibited imposition of any firearm enhancements. We disagree. Although the failure to instruct on firearms, as opposed to deadly weapons, was significant, it is not the kind of error that automatically requires reversal. Mr. Vazquez's arguments to the contrary conflate instructional error with imposition of an unauthorized sentence. While an unauthorized sentence requires correction, *Recuenco*, 163 Wn.2d at 442, instructional error does not. *Id.* at 441. Instead, we apply a constitutional harmless error analysis. Under this approach, an error will not require reversal if it is harmless beyond a reasonable doubt. *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002).

Application of the harmless error test to Mr. Vazquez's case reveals reversal is unwarranted. Uncontroverted evidence supported the jury's firearm finding. Not only did Mr. Vazquez admit discharging a gun, the State's video evidence depicted muzzle flashes coming from the weapon. This evidence left no doubt that the firearm involved in Mr. Vazquez's offense was not only one from which "a projectile or projectiles may be fired," but that the device utilized "an explosive such as gunpowder" to do so. RCW 9.41.010(9).

Contrary to Mr. Vazquez's assertions, this case is distinguishable from *State v. Recuenco*. *Recuenco* did not involve instructional error. It involved a sentencing error, whereby the trial court imposed an enhancement that had neither been charged by the State nor authorized by the jury. 163 Wn.2d at 441. Because our prejudice analysis for instructional errors is different than that for sentencing errors, *Recuenco* is unhelpful to Mr. Vazquez's arguments on appeal.

*The State's cross appeal: application of a firearm enhancement or deadly weapon verdict to Mr. Vazquez's riot while armed conviction*

*Challenge to State v. Soto*

The State asks us to part company with our prior decision in *State v. Soto*, which held that a statutory firearm enhancement under RCW 9.94A.533(3) does not apply to unranked felony offenses, such as Mr. Vazquez's riot while armed conviction. We decline this invitation as the State's arguments do not undermine our analysis in *Soto*.

In *Soto*, the State urged us to interpret RCW 9.94A.533(3) as applying to all felonies—ranked or unranked—unless expressly excluded. It pointed to statutory language stating the enhancement would apply to "any felony" classified as A, B, or C. *Soto*, 177 Wn. App. at 712; RCW 9.94A.533(3)(a)-(c). We disagreed with this analysis, explaining the prefatory language, set forth at RCW 9.94A.533(1), limits application of

6

the statute to ranked offenses, punishable under either the standard sentencing grid (RCW 9.94A.510) or the drug offense sentencing grid (RCW 9.94A.517). *Soto*, 177 Wn. App. at 714. The punishment for an unranked offense, such as Mr. Soto's, is not governed by the sentencing tables. Instead, the sentencing range is set forth by RCW 9.94A.702, which generally recommends a determinate sentence of no more than one-year confinement.

The State now asks us to delve deeper into *Soto*'s statutory analysis. It claims that even if *Soto*'s reasoning is sound, the outcome is invalid because it fails to account for the legislative history of RCW 9.94A.533.

The State's invitation to reopen *Soto* rests on questionable grounds. Apart from stare decisis,[4] rules governing statutory interpretation would appear to limit our ability to address the State's complaints. We will not look outside of statutory language to aids of construction, such as legislative history, unless we first determine the text is ambiguous. *State v. Evans*, 177 Wn.2d 186, 192-93, 298 P.3d 724 (2013).[5] Although *Soto* wrestled

---

[4] Our precedents do not provide an agreed stare decisis analysis that governs requests to revisit prior appellate court decisions. *See In re Pers. Restraint of Arnold,* 198 Wn. App. 842, 396 P.3d 375 (2017), *motion for discretionary review filed,* No. 94544-6 (Wash. May 23, 2017)

[5] Statutory language is ambiguous if it is subject to more than one reasonable interpretation.

7

with the wording of RCW 9.94A.533, we did not ultimately find the statute ambiguous. *Soto*, 177 Wn. App. at 714. The State does not challenge the accuracy of this textual analysis in this appeal. Amended Br. of Resp't-Cross-Appellant at 17-18. Given these circumstances, it is doubtful we would depart from *Soto* even if we were to find the State's legislative history analysis persuasive. Nevertheless, we do not find the State's analysis persuasive.

The State makes two arguments regarding legislative history. First, the State references the statement of purpose that was issued along with the initial enactment of the enhancement provisions of Initiative 159, the Hard Time for Armed Crime Act, LAWS OF 1995, chapter 129. The statement, provided, in pertinent part:

> (2) By increasing the penalties for carrying and using deadly weapons by criminals and closing loopholes involving armed criminals, the people intend to:
> (a) Stigmatize the carrying and use of any deadly weapons for *all felonies with proper deadly weapon enhancements*.

LAWS OF 1995, ch. 129, § 1(2) (emphasis added). According to the State, this statement makes clear Initiative 159 was intended to apply to "all felonies," not just ranked felonies. Second, the State points out that the prefatory language relied on in *Soto* for limiting the scope of RCW 9.94A.533(3) was not added until 2002. Thus, according to the State, the statute could not have been originally intended to limit its application to felonies covered

8

by the sentencing grid. We are unconvinced by either argument.

As an initial matter, the statement of purpose accompanying Initiative 159 did not provide that increased penalties applied to "all felonies." It stated that increased penalties applied to all felonies "with proper deadly weapon enhancements." This limitation was important since our Supreme Court held, long before, that weapons enhancements are not constitutionally available for all felonies. *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978). The qualified language contained in Initiative 159's statement of purpose reflects an awareness that firearm or deadly weapons enhancements would not, in fact, apply to each and every felony offense. Thus, the statement of purpose is not at odds with *Soto*.

With respect to the 2002 amendment, the change in language was not significant to any of our analysis in *Soto*. In 1995, when the firearm enhancement was first enacted, the governing statute read as follows:

> (3) The following additional times shall be added to the *presumptive sentence* for felony crimes committed after the effective date of this section if the offender or an accomplice was armed with a firearm . . . and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime.

Former RCW 9.94A.310(3) (LAWS OF 1995, ch. 129, § 2(3)) (emphasis added). A "presumptive sentence" was delineated as "[t]he intersection of the column defined by the

9

offender score and the row defined by the offense seriousness score." Former

RCW 9.94A.370 (LAWS OF 1983, ch. 115, § 8). Accordingly, although the language used

was different,[6] the firearm enhancement provision, as originally written, was clearly

limited to ranked offenses covered by the sentencing grid.

Based on the foregoing, nothing in the legislative history indicates *Soto*'s

interpretation of RCW 9.94A.533 was incorrect. Thus, even if it were appropriate to

engage in statutory construction through an analysis of legislative history, our prior

decision would still stand. The trial court properly declined to impose an enhancement

for Mr. Vazquez's riot conviction.

*Viability of the firearm verdict for strike purposes*

The State argues, based on RCW 9.94A.030(33)(t), that the firearm verdict should

not have been stricken in its entirety, even if no enhancement could be applied under

*Soto*. According to the State, the verdict should stay in place so Mr. Vazquez's riot while

---

[6] Rather than containing a prefatory statement, limiting application to former RCW 9.94A.310, *recodified as* RCW 9.94A.510 (LAWS OF 2001, ch. 10, § 6) (i.e. the statute governing the sentencing grid), the original statute in 1995 was written as limited to presumptive sentences, which were defined as sentences determined by the sentencing grid. LAWS OF 1995, ch. 129, § 2(3).

10

armed conviction can be designated a "[m]ost serious offense" or strike offense under

RCW 9.94A.030(33)(t). We disagree.

RCW 9.94A.030(33)(t) provides that any felony offense with a "deadly weapon

verdict" is a most serious offense But the State never sought a deadly weapon verdict that

would have been governed by RCW 9.94A.825. It instead sought a firearm enhancement

under RCW 9.94A.533(3). We are not, therefore, confronted with the question of

whether *Soto* would prevent entry of a deadly weapon verdict for an unranked offense.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his statement of additional grounds, Mr. Vazquez asserts: (1) trial counsel was

ineffective, (2) the jury selection process was unfair because most of the jurors were

elderly and Caucasian, and the one Hispanic juror "profiled" him before trial, and (3) the

police investigation was biased against him. Full consideration of these arguments

requires knowledge of facts and evidence that are not part of the appellate record. The

proper avenue for presenting such facts and evidence is through a personal restraint

petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). This is an

option Mr. Vazquez should consider if he wants full review of these arguments. As such,

we decline to review them here.

11

No. 33790-1-III
*State v. Vazquez*

CONCLUSION

We affirm the judgment and sentence imposed by the superior court. Mr.

Vazquez's requests to (1) enlarge time to file his report as to continued indigency and

(2) deny costs are granted.

_____
Pennell, J.

WE CONCUR:

_____    _____
Lawrence-Berrey, A.C.J.             Korsmo, J.

12