[No. 575.  Decided October 29, 1890.]

ANGUS McCLAINE v. THE TERRITORY OF WASHINGTON.

ARSON—MURDER—INSTRUCTIONS.

Under § 823, Code of Wash. T., as amended by Laws 1885-6, p. 77, it is unnecessary in charging the crime of arson, to allege that the dwelling house set fire to was used and occupied as a place of abode by any person or persons.

In an indictment for murder, the allegation "that by means of said setting fire to, and the burning of said dwelling house as aforesaid, one Harry Connor, who was then and there known by said Angus McClaine to be occupying one of the rooms in said dwelling house, and known by said Angus McClaine to be present in said room," etc., is sufficiently direct and certain to charge the defendant with knowledge of the presence of deceased on the premises at the time they were set fire to by defendant.

Under § 823, Code of Wash. T., defining the crime of arson, and providing, among other things, that "should the death of any person ensue therefrom known to be occupying or present in said premises at the time such premises are willfully set fire to, the offender . . . shall be deemed guilty of murder in the first degree," an instruction to the jury, in a prosecution thereunder for murder in the first degree, that "you must find from the evidence that the deceased was in the house at the time of the fire; that the defendant knew he was there, and that the deceased came to his death in said house by reason of the burning of the house," is erroneous, as under such an instruction the jury might have convicted the defendant, if the deceased was present in the house at any time during the fire, without regard to the fact as to whether defendant knew he was present in the house at the time it was fired.

The court, upon the trial, gave the following instruction : "The prosecution must make out its case beyond a reasonable doubt. That is to say, must prove the house of five dollars at least in value, was burned at or about the date charged; that the defendant did this purposely; that the deceased was in the house when he purposely set fire to it. And if about any of these essential facts there is any reasonable doubt you must acquit." Held, That the instruction had a tendency to mislead the jury, as all the essential elements of the crime are not given therein.

*Error to District Court, Thurston County.*

The facts are fully stated in the opinion.

*Ballard & Metcalf* (*Eddy & Gordon*, of counsel), for plaintiff in error.

*W. C. Jones*, Attorney General, for The Territory.

The opinion of the court was delivered by

Dunbar, J.—The record discloses that at a regular term of the district court of the counties of Thurston and Mason, held at the city of Olympia, at the December term of said court, an indictment was returned against the plaintiff in error, which indictment, omitting the entitling of the cause, reads as follows:

"Angus McClaine is accused by the grand jury of the Territory of Washington, for the counties of Mason and Thurston, of the crime of murder in the first degree, committed as follows: The said Angus McClaine, at the county of Mason, Territory of Washington, on the 10th day of November, 1887, feloniously, willfully and maliciously did set fire to a certain dwelling house, the property of one W. H. Kneeland, of the value of six thousand dollars, and used and occupied as a hotel by the said Angus McClaine and his family, and then and there feloniously, willfully and maliciously burned said dwelling house. That by means of said setting fire to, and burning of said dwelling house as aforesaid, one Harry Connor, who was then and there known by the said Angus McClaine to be occupying one of the rooms in said dwelling house, and known by said McClaine to be present in said room, was then and there in said room, within said dwelling house, burned and consumed, and of the burning and consuming then and there died. And the grand jury aforesaid, by force of the statute in such cases made and provided, say that said Angus McClaine, in manner and form aforesaid, did feloniously, willfully and of his malice aforethought, at said county and territory kill and murder Harry Connor." (Properly signed and dated.)

The defendant having entered his plea of not guilty to said indictment, the trial of said cause was begun on the 9th day of December, 1887, and resulted in a verdict of guilty as charged in the indictment; and on the 5th day of

January, 1888, the plaintiff in error was sentenced by the court to suffer the death penalty. A stay of proceedings and writ of error were thereafter granted by the supreme court of the Territory of Washington. Many errors were alleged in the assignment, but all the points mentioned in the supplemental brief of plaintiff in error, or presented to the court by his counsel, were the following: 1st. That the indictment in this case does not state facts sufficient to constitute the crime of murder or any felony. 2d. That it was error to permit the introduction of any evidence under the indictment. 3d. That the court erred in giving the instructions asked by the prosecuting attorney. 4th. That the court erred in instructing the jury upon its own motion.

The indictment is based upon § 823 of the code, as amended by the Session Laws of 1885 and 1886, on page 77, which reads as follows:

"Every person who shall willfully and maliciously set fire to the dwelling house [tent, cabin or any structure, no matter of what material constructed, used and occupied as a place of abode by any person or persons], any barn, stable, out-house, ship, steamboat, or other vessel, or any water-craft, milk house, banking house, distillery, manufactory, mechanics' or artificers' shop, storehouse, building or room occupied as a shop or an office for professional business, or printing office of another, any public bridge, court house, jail, market house, seminary or college, edifice or building thereto belonging, or other public buildings, of the value of five dollars [or any stack of grain, hay or straw of another, of the value of five dollars], shall be deemed guilty of arson, and upon conviction thereof shall be imprisoned in the penitentiary not more than ten years nor less than one year, or in the county jail not more than six months nor less than one month, and be fined in any sum not exceeding one thousand dollars; and should the death of any person ensue therefrom, *known to be occupying, or present on said premises* at the time such premises are willfully and maliciously set fire to, the offender, on conviction thereof shall be deemed guilty of murder in the first degree."

The words within the brackets being the amendments made in 1885–6 to § 823 of the code.

It is contended by plaintiff in error that the indictment in this case nowhere states that the dwelling house burned was used and occupied as a place of abode by anybody; and that the allegation that it was used and occupied as a hotel by the said Angus McClaine and his family is not sufficient under this statute. That it is the kind of occupancy contemplated by the statute where the building burned is alleged to be a "dwelling house." That so far as the indictment alleging that the dwelling house was the property of one W. H. Kneeland is concerned, the word "property" is not used in the statute in connection with the burning of a dwelling house. That it is not the burning of a dwelling house the *property* of another that is included in the statute; but that it is the burning of the *dwelling house* of another that the statute defines as arson. That our statute in reference to the burning of a dwelling house is substantially the same as arson at the common law. Were we to concede this last proposition we should be compelled to pronounce the indictment insufficient; for at common law arson was the malicious and willful burning of the dwelling house of another. The gist of the offense being the danger to the life of persons who were dwelling in the house. It was an offense against the habitation and regarded the possession rather than the property. And when the burning of any other house than a dwelling house was included within the offense, as the burning of barns and other out-houses, it was on the theory that the flames would extend to the dwelling and endanger the habitation. Hence the burning of many structures, which is arson under our statutes, was simply a misdemeanor at the common law. At the common law there was no question of value. It mattered not whether the house burned was worth thousands of dollars or but a few shillings; whether it was a palace

or a hovel. It was the safety of the inhabitants of the structure that the law sought to protect.

But a careful reading of our statute leads us to the conclusion that the legislature had in contemplation the protection of property as well as the preservation of life; for in every instance, including even a dwelling house, a moneyed value is attached, and to secure a conviction for arson under the statute value would have to be alleged and proven. The statutory crime and the common law crime are radically different. And we can but adopt the view of the attorney general, that the legislature intended to define and punish the crime of arson upon an entirely different principle from that in which the common law made it belong; that they have intended to define a new crime, and the common law definition cannot be resorted to, even for the purpose of aiding in the construction of this law, because it is manifest that the legislature used words in an entirely different sense from the sense in which they were used at common law.

From the number of buildings and structures made the subject of arson in § 823 of the code, the burning of many of which could in nowise ordinarily endanger life, it is evident that the main idea of the legislature was the protection of property; and this is confirmed by the fact that the legislature afterwards added " any stack of grain, hay or straw of another, of the value of five dollars," thereby carrying the provisions of the statute beyond the realm of habitation, although the question of valuation is never lost sight of. Under the provisions of § 823, it would not have been arson to have burned a stack of grain, hay or straw of another; but the experience of the people soon after that enactment taught them that this was a class of property which needed protection from incendiaries, and the legislature, doubtless in response to their demands, incorporated this further protection of property under this section. The qualifying words " of another " are evidently used in the

sense of ownership or property. A stack of grain of another, or a stack of straw of another, means nothing more nor less than a stack of grain or straw belonging to another, or the property of another. And as the words "of another" are used in reference to a dwelling house in the same sense, and qualify it in the same manner as they do all the succeeding words to which they apply, we must conclude by all admissible rules of construction that it is there to be construed to mean, a dwelling house the *property* of another, and not a dwelling house *inhabited* by another.

It is urged again that the indictment is defective, because it does not charge that the dwelling house was used and occupied as a place of abode by any person or persons. Whether the allegation that "the dwelling house was used and occupied as a hotel by the said Angus McClaine and his family" is a sufficient allegation, where an allegation of occupancy as a place of abode is required by the statute, we will not now discuss, for we are clearly of the opinion that under our statute no such an allegation is necessary, as the words " used and occupied as a place of abode by any person " were not intended to qualify the words " dwelling house," " tent or cabin." These words are not found in § 823, although the word " dwelling house" is in said section ; the word " dwelling house " being unqualified excepting by the words "of another." Afterwards, during the session of 1885–6, the words " tent or cabin " were added, because it was questioned whether the word " dwelling house " was comprehensive enough to include these mean habitations ; and, so that there might be no question about any manner of dwelling being included in the statute, after the words " tent or cabin " were added the words " or any other structure, no matter of what material constructed, used and occupied as a place of abode by any person or persons ;" the words "used and occupied as a place of abode by any person or persons "

plainly qualifying the words "or any structure, no matter of what material constructed." Any other construction of this sentence would force us to conclude that the legislature intended to punish, under the provisions of this chapter, the malicious burning of a water craft, though it may not have been used for months, and yet not punish the malicious burning of a dwelling house, unless it was used and occupied as a place of abode. We do not think that such is a fair or sensible construction of the statute. The plain intention of the legislature, gathered from the act and the history of its amendments, was to punish the malicious burning of any property mentioned in the act.

We do not think there is any force in the objection that the indictment does not charge, by direct statement, that the plaintiff in error knew that Connor, the deceased, was occupying or present in said premises at the time they were fired, but that it only appeared by way of recital. The language of the indictment is, "That by means of said setting fire to, and the burning of said dwelling house, as aforesaid, one Harry Connor, who was then and there known by said Angus McClaine to be occupying one of the rooms in said dwelling house, and known by said Angus McClaine to be present in said room," etc. We cannot understand how an averment could be more directly stated than this. It would make it no stronger and no more direct to transpose the words and say, "The said McClaine did know," etc. It is simply a choice of expression and arrangement of words. We are of the opinion that the indictment contains every averment necessary to charge the statutory crime of arson.

We now pass to the third and fourth grounds of objection urged by plaintiff in error; objections which are more serious, in our opinion, and which are fatal to the prosecution in this case. At the instance of the prosecuting attorney the court gave the jury the following instruction: "You must find from the evidence that Harry Connor was

in the house at the time of the fire; that the defendant knew that he was there; and that said Connor came to his death in said house by reason of the burning of the house," and in no other part of the charge is the subject of the defendant's knowledge of Connor's presence at the time of the fire mentioned. It will be observed that the court here does not instruct the jury that they must find that the defendant knew that Connor was in the house at the time he set fire to it, but " at the time of the fire." This would embrace any time between the setting of the fire and the entire destruction of the house. Under such an instruction, if it had been proven that Connor was not there at the time of the setting of the fire, but that he afterwards came, and defendant knew of his being there, and in attempting to extinguish the flames, or through any accident, he lost his life in the flames, the jury would have been justified in convicting McClaine of murder. The language of the statute is: "And should the death of any person ensue therefrom, known to be occupying or present on said premises at the time such premises are willfully set fire to," etc. Were this instruction cured or explained by any other instruction, it might possibly be overlooked; but the following instruction given by the court on its own motion lays down a still looser rule for the guidance of the jury. The court says: " The prosecution must make out its case beyond a reasonable doubt. That is to say, must prove the house, of $5.00 at least in value, was burned at or about the date charged; that the defendant did this purposely; that Connor, or Connors, was in the house when he purposely set fire to it. And, if about any of these essential facts there is any reasonable doubt, you must acquit."

Here it is not even hinted at that the defendant need have any knowledge whatever of Connor's whereabouts at the time the fire was set, or any time during the fire; but the jury is charged in substance that the essential facts are,

that the house burned was of the value of $5.00; that defendant burned it purposely, and that Connor was in the house at the time it was purposely set fire to; and that, if these essential facts are proven beyond a reasonable doubt, they must convict. It is too obvious to admit of discussion that all the elements of the crime necessary to be proven were not presented to the jury in this instruction; and the question now to be considered is, whether this particular instruction was so segregated from the rest of the charge and made so distinct and impressive that it would be likely to mislead the jury as to what were the essential elements of the crime. It is urged by the attorney general that "the omission to state all the law in a particular paragraph, if the law is correctly stated in the charge as a whole, is not error." We think the authorities uniformly hold that if, in defining the crime, any of the essential elements of the crime be omitted, or any legal defense to which the defendant is entitled, such omission cannot be cured by reason of any other portion of the charge correctly stating the law. In the case of the *People v. Wong Ah Ngow*, 54 Cal. 151, 35 Am. Dec. 69, where it was alleged that the court, in one paragraph, had wrongfully instructed the jury on the law governing the subject of flight, the court in reversing the judgment says: "But it is claimed, on behalf of the prosecution, that the charge, *as a whole*, is correct; and therefore the judgment should stand. There is no doubt that in one part of the charge the law on this subject (flight) was correctly given to the jury; but the charge was contradictory, and that which was bad cannot be aided by that which was good;" and the court cited, as in point, the case of *People v. Valencia*, 43 Cal. 552, and that case is certainly in point here. In that case the court said: "It is not doubted that that part of the charge is erroneous, as it omits from the definition of murder in the first degree the essential qualities of deliberation and premeditation; but it is contended by the prosecution, that as the court had correctly

defined murder in the first degree, and as the jury would consider together all the parts or propositions of the charge, the error in the part above cited is cured by the correct definition which had already been given. The two parts of the charge are contradictory, and the jury would not be able to say that the court intended that the former rather than the latter should be received by them as the correct definition of murder in the first degree." In the *People v. Bush*, 65 Cal. 129, the court says: "It is no answer to the objection that an erroneous instruction was given, for the prosecution to show that in another part of the charge another instruction was given in which the law was correctly stated." So to the same effect, *Rice v. Commonwealth*, 100 Pa. St. 28; *People v. Anderson*, 44 Cal. 65; *State v. Ferguson*, 9 Nev. 106; *Holmes v. State*, 23 Ala. 17. In *People v. Campbell*, 30 Cal. 313, where the court in its general charge omitted one of the grounds of self-defense, but afterwards gave the instruction at the request of the defendant, the supreme court held that the instruction was somewhat mollified by the portion of the charge before given, and the judgment was reversed.

It seems to us that the case at bar is a much more extreme case than any above cited; for the instruction of the court on its own motion, to which the objection is raised, was evidently an attempt to group the essential elements of the crime together and present them, thus condensed, for the consideration of the jury. And the jury, always anxious to ascertain the opinion of the court, are more inclined to give consideration to its voluntary instructions than to instructions given by request of either the prosecution or defense, and would be liable, if indeed not actually justified in this case, in concluding that the essential facts necessary to be proven to ensure a conviction, were the identical essential facts mentioned by the court on its own motion. And even if all the instructions in this case were considered together, without misleading or causing any embarrass-

ment by omissions from any particular paragraph of the instructions, the law is not correctly stated, and the rights of the defendant were not wholly protected. This is a capital case; the defendant's life is at stake, and he had a right to have the law governing his case plainly, explicitly and correctly stated. This was not done. It follows that the judgment must be reversed, and the case remanded for a new trial. And it is so ordered.

SCOTT, STILES and HOYT, JJ., concur.

ANDERS, C. J.—I concur in the judgment, but not entirely in the view of my brothers as to the construction of the statute defining arson.