199 P.3d 460 (2009)
STATE of Washington, Respondent and Cross-Appellant,
v.
Nicolas A. BAINARD, Appellant.
No. 23247-6-III.
Court of Appeals of Washington, Division 3.
January 6, 2009.
*461 Janet G. Gemberling, Gemberling & Dooris PS, Seattle, WA, for Appellant.
Douglas J. Shae, Attorney at Law, Wenatchee, WA, for Respondent and Cross-Appellant.
SCHULTHEIS, C.J.
¶ 1 Nicolas Bainard appeals the firearm enhancements to his sentence for his convictions on two counts of second degree murder. He claims that because the jury found that he was armed with a deadly weapon, he should have been sentenced to a two-year deadly weapon enhancement, rather than the five-year firearm enhancement, which was not based on facts found by the jury. We agree and reverse the sentence and remand for correction of his sentence.
¶ 2 The State cross-appeals, asserting that the trial court erred by vacating the guilty verdict on the first degree arson charge. The court held that the State had failed to prove an essential element of the offense because the dead bodies of the murder victims within the building when it was burned are not human beings within the meaning of the statute as charged. See RCW 9A.48.020(1)(c) (first degree arson by causing a fire in a building "in which there shall be at the time a human being who is not a participant in the crime"). We conclude that the trial court correctly vacated the conviction. We therefore affirm the trial court's arrest of judgment on the first degree arson charge.

FACTS
¶ 3 The State charged Mr. Bainard with two counts of first degree murder arising from the deaths of his parents, Richard and Ella Bainard, and one count of first degree arson. The second amended information alleged that Mr. Bainard "unlawfully, feloniously, and with premeditated intent to cause the death of another person, did shoot with a shotgun, thereby causing the death of Richard Bainard, a human being, and in the commission of the crime the defendant . . . was armed with a deadly weapon thereby invoking the provisions of RCW 9.94A.533 and/or 9.94A.602." Clerk's Papers (CP) at 240. An identical count charged Mr. Bainard with the death of Ella Bainard.
¶ 4 The information charged that the arson was committed by causing a fire or explosion in a building "in which there was at that time a human being who was not a participant in the crime." CP at 241.
¶ 5 At trial, the medical examiner testified that Mr. Bainard's parents had died of gunshot wounds and were dead before the building in which they were found was burned. Mr. Bainard had been in the Chelan County family home during the evening of June 29, 2003, before his parents were shot and was present and unharmed at the scene of the fire some seven or eight hours later. Mr. Bainard had made threats to kill his parents in the presence of his peers. In the early morning hours of June 30, Mr. Bainard told a high school friend "that he did it, he finally did it" and asked the friend to be his alibi. Report of Proceedings (RP) at 514.
¶ 6 The court gave the jury a "to-convict" instruction on the lesser included offense of second degree murder:
To convict the defendant of the lesser included crime for count I of murder in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 29th day of June, 2003, the defendant shot Richard Bainard with a shotgun;
(2) That the defendant acted with intent to cause the death of Richard Bainard;

*462 (3) That Richard Bainard died as a result of the defendant's acts; and
(4) That the acts occurred in the State of Washington.
CP at 156. An identical instruction was given for count 2, the second degree murder of Ella Bainard.
¶ 7 The court gave a special verdict instruction:
For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime in count I. A person is armed with a deadly weapon if, at the time of the commission of the crime, the deadly weapon is easily accessible and readily available for offensive or defensive use. The State must prove beyond a reasonable doubt that there is a connection among the defendant, the crime, and the deadly weapon.
A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded.
CP at 166. An identical special verdict was given for count 2.
¶ 8 The jury returned guilty verdicts on two counts of second degree murder and one count of arson. It returned special verdicts finding that Mr. Bainard was armed with a deadly weapon at the time of the commission of the two murder counts.
¶ 9 The court granted the defense motion under CrR 7.4 to arrest the judgment, finding that the State had failed to prove that at the time of the arson there was a human being in the building. The charge was dismissed with prejudice.
¶ 10 The defense challenged the sufficiency of the jury instructions and verdicts to support sentencing enhancements based on possession of a firearm or deadly weapon. The court found the verdicts were sufficient to support firearm enhancements of five years on each of the two murder counts. The court reasoned that because the jury was instructed that a firearm is a deadly weapon, the jury found Mr. Bainard was armed with a deadly weapon, and therefore must have found he was armed with a firearm.
¶ 11 The State recommended standard range sentences of 160 months and 165 months on the second degree murder convictions plus two 60-month sentence enhancements for the firearm. The court imposed a sentence of 450 months' confinement, including the two consecutive 60-month firearm enhancements. This appeal follows.
¶ 12 We stayed this case pending the mandate of the firearm enhancement issue decided in State v. Recuenco, 154 Wash.2d 156, 110 P.3d 188 (2005) (Recuenco I), rev'd, Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (Recuenco II). The stay was continued after the United States Supreme Court granted certiorari. This case was released from stay after the Washington Supreme Court decided State v. Recuenco, 163 Wash.2d 428, 180 P.3d 1276 (2008) (Recuenco III). The parties supplemented their briefs after Recuenco II and III.

DISCUSSION
¶ 13 The State first claims that because Mr. Bainard did not take exception to the special verdict instructions, he invited the error. The invited error doctrine prevents parties from benefiting from an error they caused at trial. City of Seattle v. Patu, 147 Wash.2d 717, 720-21, 58 P.3d 273 (2002). The doctrine does not apply here, however. Recuenco I, 154 Wash.2d at 163. Mr. Bainard is challenging his sentence. Id.
¶ 14 Where the State does not give notice of the specific enhanced penalty it ultimately seeks to invoke, the court may not impose that enhanced penalty. Recuenco III, 163 Wash.2d at 433-37, 180 P.3d 1276 (citing State v. Theroff, 95 Wash.2d 385, 392-93, 622 P.2d 1240 (1980)). The State alleged that Mr. Bainard was armed with a deadly weapon where it could have alleged a firearm enhancement or not sought any enhancement at all. Id. at 436, 180 P.3d 1276. This is not, therefore, a charging error. Further, the jury was instructed pursuant to the State's deadly weapon enhancement charge. Id. It is not, then, an instructional error. Instead, any claimed "error occurred during the sentencing proceedings when the sentencing *463 judge exceeded the authority issued to the court by the jury's determination." Id. at 441, 180 P.3d 1276.
¶ 15 This case implicates Mr. Bainard's Sixth Amendment right to have a jury decide a sentence enhancement. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). As a constitutional challenge, it is reviewed de novo. State v. Cubias, 155 Wash.2d 549, 552, 120 P.3d 929 (2005) (citing State v. Bradshaw, 152 Wash.2d 528, 531, 98 P.3d 1190 (2004)).
¶ 16 Both parties assert that Recuenco III is dispositive under their respective interpretations. In Recuenco III, the defendant was charged with second degree assault with a deadly weapon, "`to-wit: a handgun'" under former RCW 9.94A.125 (1983) and former RCW 9.94A.310 (1999). Recuenco III, 163 Wash.2d at 431, 180 P.3d 1276. The trial court accepted defense counsel's proposed special verdict form directing the jury to make a specific finding regarding whether Mr. Recuenco was "`armed with a deadly weapon at the time of the commission of the crime.'" Id. at 432, 180 P.3d 1276. The jury was further instructed that a firearm, whether loaded or unloaded, is a deadly weapon. Id. at 439, 180 P.3d 1276 (citing 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.06 (2d ed. Supp. 2005) (WPIC)).
¶ 17 Defense counsel requested that the jury be instructed on the definition of a firearm, but the prosecutor persuaded the court that such an instruction was unnecessary because there was no firearm element included in the charged crime or enhancement. Id. at 432, 180 P.3d 1276.
¶ 18 The jury found Mr. Recuenco guilty of second degree assault, a class B felony, and found by special verdict that Mr. Recuenco was armed with a deadly weapon. The trial court sentenced him to 3 months for the assault and 36 months for the firearm enhancement. Id. The trial court rejected defense counsel's argument that only a 12-month deadly weapon enhancement was appropriate because the jury had returned a special verdict only on a deadly weapon enhancement. Id.
¶ 19 Mr. Recuenco appealed his sentence, arguing that he was deprived of his due process rights because a firearm enhancement was imposed despite the jury finding that he was armed with the deadly weapon. In an unpublished opinion, the Court of Appeals held that any possible error was harmless because the only weapon mentioned at any stage of the proceedings was a firearm. State v. Recuenco, noted at 117 Wash.App. 1079, 2003 WL 21738927, at *5, 2003 Wash. App. LEXIS 1701.
¶ 20 The Washington Supreme Court reversed Mr. Recuenco's sentence, holding that the imposition of the firearm enhancement without a firearm finding by the jury violated Mr. Recuenco's Sixth Amendment right. Recuenco I, 154 Wash.2d at 164, 110 P.3d 188 (citing Apprendi, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; Blakely, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403).
¶ 21 In Recuenco II, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466, the United States Supreme Court held that Blakely errors can be subject to harmless error analysis. The matter was remanded to the Washington Supreme Court to consider whether the failure to submit a sentencing factor to the jury is subject to harmless error analysis under Washington law.
¶ 22 The court held in Recuenco III that although Mr. Recuenco was charged with assault with a deadly weapon enhancement, and he was convicted of assault with a deadly weapon enhancement, he was erroneously sentenced with a firearm enhancement. 163 Wash.2d at 442, 180 P.3d 1276. It concluded that "it can never be harmless to sentence someone for a crime not charged, not sought at trial, and not found by a jury. In this situation, harmless error analysis does not apply." Id. The enhancement was therefore vacated.
¶ 23 The court in Recuenco III reasoned that Mr. Recuenco was not charged with a firearm enhancement. Sentencing enhancements must be included in the information. 163 Wash.2d at 434, 180 P.3d 1276 (citing In re Pers. Restraint of Bush, 95 Wash.2d 551, *464 554, 627 P.2d 953 (1981)). When a sentence enhancement describes an increase beyond the maximum authorized statutory sentence, as it does in this context, it becomes the equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Id. (citing Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). Under Washington law, the State must allege in the information the crime which it seeks to establish, including sentencing enhancements. Id. (citing State v. Crawford, 159 Wash.2d 86, 94, 147 P.3d 1288 (2006)).
¶ 24 In Mr. Recuenco's case, a charging decision was made by the State that it would seek the lesser deadly weapon enhancement. Former RCW 9.94A.310(4)(b). Because he was informed of the charge, he had the ability to prepare a defense for a deadly weapon. Recuenco III, 163 Wash.2d at 435-36, 180 P.3d 1276. But Mr. Recuenco did not receive notice that a more serious firearm enhancement was sought. Therefore, he could not be sentenced under a firearm enhancement. Id. at 440, 180 P.3d 1276.
¶ 25 The same is true here. The information under which Mr. Bainard was ultimately tried charged him with notice of the prosecutor's election to seek an enhancement under "the provisions of RCW 9.94A.533 and/or 9.94A.602" for being "armed with a deadly weapon." CP at 240, 241. He was not given notice of a firearm enhancement.
¶ 26 In Recuenco the jury was instructed, consistent with the specific charge brought, on the deadly weapon enhancement. Recuenco III, 163 Wash.2d at 436, 180 P.3d 1276. The Recuenco court noted that the trial court did not give the jury a special verdict firearm instruction such as WPIC 2.10.01.[1]Id. at 437, 439, 180 P.3d 1276. Instead, the jury was instructed on the special verdict for a deadly weapon. Thus, the jury was given neither the facts nor the law upon which to base a firearm enhancement under WPIC 2.10.01.
¶ 27 The Recuenco III court held that a defendant is entitled "to have a jury determine beyond a reasonable doubt if he was guilty of the crime and sentencing enhancement charged." 163 Wash.2d at 440, 180 P.3d 1276. "Without a jury determination that he was armed with a `firearm,' the trial court lacked authority to sentence [Mr.] Recuenco for the additional two years that correspond with the greater enhancement." Id. The jury here, as in Recuenco, returned special verdicts that Mr. Bainard was armed with a deadly weapon.
¶ 28 The Recuenco III court concluded: "No harmless error analysis can apply to a case where the State specifically (and properly) adds an enhancement allegation and asks the jury to make the specific finding supporting the enhancement sought, and where the jury returns the verdict." Id. at 441, 180 P.3d 1276. The same is true with Mr. Bainard's case.
¶ 29 Mr. Bainard next argues this court cannot remand for the imposition of a deadly weapon enhancement because "[t]he special verdict form for the deadly weapon enhancement permitted the jury to find Mr. Bainard was armed with a deadly weapon based on his use of a firearm, a weapon which is expressly excluded from the definition of deadly weapon." Appellant's 2d Supp. Br. at 6. Mr. Bainard does not support his contention with authority. We need not address it. *465 Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
¶ 30 Nonetheless, we note that the trial court in Recuenco instructed the jury pursuant to WPIC 2.06. Recuenco III, 163 Wash.2d at 439, 180 P.3d 1276. That instruction relevantly defines a deadly weapon: "[A firearm, whether loaded or unloaded,] is a deadly weapon." WPIC 2.06 (alteration in original). The instruction in Mr. Bainard's case was the same. Mr. Bainard has failed to persuade us to proceed any differently than the Washington Supreme Court did when it remanded Recuenco III.

CROSS-APPEAL
¶ 31 The State asserts that the trial court erred by arresting the verdict and dismissing the charge of first degree arson under RCW 9A.48.020(1)(c). The statute requires proof of causing a fire in a building "in which there shall be at the time a human being who is not a participant in the crime." Id. The trial court construed the term "human beings" to mean live persons. Because the building burned at issue contained dead bodies at the time of the fire, it granted the motions to arrest and dismiss.
¶ 32 We review issues of statutory construction related to evidence sufficiency de novo. City of Redmond v. Moore, 151 Wash.2d 664, 668, 91 P.3d 875 (2004); State v. Jackson, 145 Wash.App. 814, 818, 187 P.3d 321 (2008) (citing State v. Watson, 146 Wash.2d 947, 954, 51 P.3d 66 (2002)). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Id.
¶ 33 A court's objective in construing a statute is to determine and give effect to the legislature's intent and purpose. State v. Cromwell, 157 Wash.2d 529, 534, 140 P.3d 593 (2006). "`[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" Udall v. T.D. Escrow Servs., Inc., 159 Wash.2d 903, 909, 154 P.3d 882 (2007) (alteration in original) (internal quotation marks omitted) (quoting Tingey v. Haisch, 159 Wash.2d 652, 657, 152 P.3d 1020 (2007)). If a term is not statutorily defined, the term is given its ordinary or common law meaning. State v. Alvarez, 128 Wash.2d 1, 11, 904 P.2d 754 (1995). A court must, when possible, "give effect to every word, clause and sentence of a statute." Cox v. Helenius, 103 Wash.2d 383, 387, 693 P.2d 683 (1985).
¶ 34 The first degree arson statute relevantly provides:
(1) A person is guilty of arson in the first degree if he knowingly and maliciously:
(a) Causes a fire or explosion which is manifestly dangerous to any human life, including firemen; or
(b) Causes a fire or explosion which damages a dwelling; or
(c) Causes a fire or explosion in any building in which there shall be at the time a human being who is not a participant in the crime; or
(d) Causes a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds.
Former RCW 9A.48.020(1) (1981).
¶ 35 The term "human being" is not defined by the statute. "In the absence of a statutory definition, we will give the term its plain and ordinary meaning ascertained from a standard dictionary." State v. Sullivan, 143 Wash.2d 162, 175, 19 P.3d 1012 (2001) (footnote omitted). In the context of the statute, the term "human" means "having some of the characteristics of a living person." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1100 (1993). A being is "conscious or mortal existence: LIFE." Id. at 199, 19 P.3d 1012. The common and ordinary definition of human being is then a living person.
¶ 36 According to the State, because the term "human being" can refer to living or extinct members of the primate family, the term includes dead persons. Respondent/Cross-Appellant's Br. at 20. The legislature would be surprised to learn it wrote a first degree arson statute to protect monkey *466 bones  as long as the bones did not participate in causing the fire. This is the type of absurd result we attempt to avoid in a commonsense analysis. Tingey, 159 Wash.2d at 664, 152 P.3d 1020. Equally absurd is the notion that a dead body would participate in a crime.
¶ 37 Mr. Bainard points to a case in which the Kansas Supreme Court interpreted a similar statutory provision. State v. Kingsley, 252 Kan. 761, 851 P.2d 370 (1993). The Kansas statute described aggravated arson as an arson "[c]ommitted upon a building or property in which there is a human being." Kan. Stat. Ann. § 21-3719. The court concluded that in the context of the aggravated arson statute "a human being is a living person." Kingsley, 252 Kan. at 781, 851 P.2d 370.
¶ 38 The court reasoned:
[T]he policy behind elevating arson from a class C felony to aggravated arson, a class B felony, when there is a human being in the property must certainly involve the risk to human life and safety. There is no risk to human life or safety when there is no living person in the property. We are not aware of any rational basis to interpret a human being as other than a living person in the context of the aggravated arson statute.
Id.
¶ 39 The Kingsley court also examined the dictionary definition:
Webster's New Twentieth Century Dictionary 883 (2d ed.1973) states the initial definition of the adjective "human" as: "1. of or characteristic of a person or persons, such as people have. 2. having the form or nature of a person; that is a person; consisting of people." In defining the word "human" as a noun, it states the definition as "a human being," and in defining the word "being" as a noun, it states the initial definition as: "1. existence; the state of existing; living; life." Webster's New Twentieth Century Dictionary 168. Absent a clear indication from the legislature to the contrary, we must conclude that in the context of [Kan. Stat. Ann. §] 21-3719, a human being is a living person.
Id.
¶ 40 The Kingsley court's reasoning is sound. There is no rational basis to interpret the term "human being" as anything other than a living person in the context of the first degree arson statute. RCW 9A.48.020(1)(c).
¶ 41 Mr. Bainard further argues that the legislative history and evolution of the crime of arson supports his position. We agree.
¶ 42 At common law, the crime of arson was viewed primarily as a crime against the person, and its primary purpose was to protect the inhabitants of a dwelling from injury or death by fire. 3 WAYNE R. LaFAVE, SUBSTANTIVE CRIMINAL LAW § 21.3, at 239 (2d ed.2003); see McClaine v. Territory, 1 Wash. 345, 348-49, 25 P. 453 (1890) ("At the common law there was no question of value. . . . It was the safety of the inhabitants of the structure that the law sought to protect."); 5 AM.JUR.2D Arson and Related Offenses § 1, at 839 (2007). Legislative enactment in many states broadened the concept of arson to include damage by fire or explosion to many structures other than dwelling houses, and to other kinds of property. 3 LaFAVE, supra, at 240-42. These developments are reflected in the development of Washington arson law.
¶ 43 Until 1909, arson was defined by statute as the act of setting fire to any of a number of different kinds of property including but not limited to dwellings and business and agricultural structures. LAWS OF 1895, ch. 87, § 1; LAWS OF 1886, p. 77, § 1. In 1909, the legislature rewrote the arson statutes, creating two degrees of arson. First degree arson had two alternatives: (1) the willful burning "in the night-time the dwelling house of another, or any building in which there shall be at the time a human being" or (2) setting "any fire manifestly dangerous to any human life." LAWS OF 1909, ch. 249, § 320. Second degree arson was defined to include the burning of various types of structures and property not directly related to human habitation or occupancy. LAWS OF 1909, ch. 249, § 321. The 1909 statutes have remained the law of Washington up to the present, *467 with only minor changes. See RCW 9A.48.020, .030.
¶ 44 The legislature codified common law arson as first degree arson, leaving intact the concerns for the danger to human life. State v. Spino, 61 Wash.2d 246, 248, 377 P.2d 868 (1963). "Most statutes provide that the crime is either first-degree or aggravated arson any time there is a risk to a human life because of malicious and willful burning, with the risk being measured by potential, not actual, harm to persons." 5 AM.JUR.2D, supra, § 5, at 847 (footnote omitted).
¶ 45 In 1981, the legislature added a fourth way of committing first degree arson, namely causing "a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds." LAWS OF 1981, ch. 203, § 2. This amendment also involved an element of human danger. The amendment was made contemporaneous with changes to the Model Penal Code, which included a similar "intent to defraud" provision "`in view of the great danger of bodily injury from the extensive fires often planned and executed by professionals.'" 3 LaFAVE, supra, § 21.3(f), at 253 (emphasis added) (quoting MODEL PENAL CODE § 220.1, cmt. at 25 (1980)).
¶ 46 Second degree arson, however, is not known in common law. Spino, 61 Wash.2d at 248, 377 P.2d 868. The crime departs from the common law to prohibit burning that merely affected property interests. State v. Westling, 145 Wash.2d 607, 611, 40 P.3d 669 (2002) (quoting 5 AM.JUR.2D Arson and Related Offenses § 1, at 781-82 (1995)).
¶ 47 Because the arson statute was derived from the common law, it is appropriate to construe RCW 9A.48.020(1)(c)-including the phrase "human being"  in the context of the common law. This requires the logical conclusion that a human being, as used in RCW 9A.48.020(1)(c) refers to a living person, rather than human remains.

STATEMENT OF ADDITIONAL GROUNDS
¶ 48 In a statement of additional grounds for appeal, Mr. Bainard makes general assertions of jury bias and prejudice, "prosecutorial misconduct in the juror instruction" and witness examination, due process violations, and ineffective assistance of counsel. These claims are too vague to examine.
¶ 49 Mr. Bainard also alludes to the sufficiency of the evidence. Mr. Bainard claims that the State forensic expert testified that he could not tell if the gun was operable prior to the fire. Mr. Bainard is presumably referring to the testimony of Edward Robinson, a firearms expert, who received only melted, charred, and rusted portions of firearm evidence that could be found after the fire in this case. Mr. Robinson was asked to examine the evidence to determine the gauge of the shotgun, the serial number, and "the choke that the shotgun barrel might have in it." RP at 453.
¶ 50 Mr. Robinson testified that he could not tell if the firearms were discharged prior to the fire or if they were operable prior to the fire because of their condition. But he also testified that the shotgun wadding removed from the bodies of Mr. Bainard's parents, who were shot at very close range, was consistent with the remains of the firearms found from the fire. This testimony is not inconsistent with Mr. Bainard's conviction for second degree murder.
¶ 51 Mr. Bainard's statement of additional grounds has no merit.

CONCLUSION
¶ 52 We conclude that the court erred in sentencing Mr. Bainard with an enhancement that was not charged by the State or found by the jury. We therefore reverse the enhancement and remand for correction of the sentence. We further conclude that the court properly found that a person cannot commit the crime of first degree arson under RCW 9A.48.020(1)(c) by causing a fire in a building "in which there shall be at the time a human being who is not a participant in the crime" when the building contained dead bodies. We therefore affirm the trial court's arrest of judgment on the first degree arson charge.
WE CONCUR: SWEENEY and KULIK, JJ.
NOTES
[1] WPIC 2.10.01 provides:

For purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a firearm at the time of the commission of the crime [in Count ____].
A person is armed with a firearm if, at the time of the commission of the crime, the firearm is easily accessible and readily available for offensive or defensive use. The State must prove beyond a reasonable doubt that there was a connection between the firearm and the defendant [or an accomplice]. The State must also prove beyond a reasonable doubt that there was a connection between the firearm and the crime. In determining whether this connection existed, you should consider the nature of the crime, the type of firearm, and the circumstances under which the firearm was found.
[If one participant in a crime is armed with a firearm, all accomplices to that participant are deemed to be so armed, even if only one firearm is involved.]
A "firearm" is a weapon or device from which a projectile may be fired by an explosive such as gunpowder.
(Alterations in original.)