# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59518-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| VENIAMIN ZIMIN, | |
| Appellant. | |

CHE, J. — Veniamin Zimin appeals his judgment and sentence for first degree burglary and felony violation of a court order, both domestic violence and aggravated domestic violence offenses.

Zimin argues (1) the prosecutor committed reversible misconduct in closing argument by urging jurors to consider improper evidence and to ignore a State witness's testimony; (2) at sentencing, the trial court unconstitutionally made findings of fact in calculating Zimin's offender score and imposing an exceptional sentence, and the charging document excluded notice of such alleged facts; and (3) a crime victim penalty assessment (VPA) and DNA collection fee should be stricken from Zimin's judgment and sentence because the trial court found him indigent.

We hold (1) Zimin fails to show that the prosecutor's statements were improper, (2) Zimin fails to show that review of his arguments related to his offender score is warranted under RAP 2.5 and the trial court did not violate Zimin's constitutional rights by imposing an

No. 59518-4-II

exceptional sentence, but (3) we agree with Zimin and the State that the VPA and DNA collection fee should be stricken from his judgment and sentence.

Accordingly, we affirm Zimin's convictions but reverse the VPA and DNA collection fee and remand to the trial court to strike them from Zimin's judgment and sentence.

FACTS

Zimin and his girlfriend, Lyudmila Tadzhibayev, allegedly entered Nina Yelanskaya's apartment and assaulted her in October 2020. The State charged Zimin and Tadzhibayev by second amended information with first degree burglary.[1] The State additionally charged Zimin with felony violation of a court order under former RCW 26.50.110(4).[2] In the second amended charging document, the State notified Zimin that it was seeking a sentence above the standard sentencing range based on the alleged aggravating circumstances that both offenses involved domestic violence and occurred within the sight or sound of Zimin and Yelanskaya's minor children. The document did not mention Zimin's criminal history or an allegation that Zimin committed the offenses while on community custody.

Zimin and Yelanskaya previously had a romantic relationship with each other and shared four children. A no-contact order, in effect during October 2020, protected Yelanskaya from

_____

[1] We previously affirmed the conviction of Tadzhibayev, Zimin's codefendant in the case. *State v. Tadzhibayev*, 33 Wn. App. 2d 1001 (2024). The circumstances of the crimes appear in some detail in that opinion. We limit the discussion here to essential background facts and those facts directly relevant to the legal issues presented in Zimin's appeal.

[2] Former RCW 26.50.110(4) made it a class C felony for someone to commit an assault that is a violation of various court orders including no-contact orders. The legislature repealed the statute in 2022; however, it remained in effect at the time of Zimin's crime and trial. LAWS OF 2021, ch. 215, § 170.

2

Zimin and prohibited Zimin from coming within 100 feet of Yelanskaya; however, Yelanskaya would permit Zimin to spend time with their children at her apartment if she was not there.

On October 31, Zimin and Tadzhibayev went to the parking lot across from Yelanskaya's apartment complex to deliver birthday presents to one of Zimin and Yelanskaya's children. When Yelanskaya went down to the parking lot, Yelanskaya and Tadzhibayev exchanged insults. As Zimin and Tadzhibayev began to leave, Yelanskaya and her children returned to their apartment and Yelanskaya called 911.

According to Yelanskaya, about 10 minutes later she heard a knock on her apartment door and, when she opened the door, Tadzhibayev forced her way into the apartment and hit Yelanskaya in the chest. Zimin followed Tadzhibayev into the apartment. Someone hit Yelanskaya in the head, and Zimin struck her in the leg. After Zimin and Tadzhibayev left the apartment, Yelanskaya called 911 for a second time. Zimin and Tadzhibayev denied entering Yelanskaya's apartment and having physical contact with her.

One of the State's witnesses, an officer dispatched following Yelanskaya's first 911 call, testified that a computer-aided dispatch (CAD) system logged Yelanskaya's first 911 at 12:49 p.m. and her second call at 12:52 p.m. The officer stated that, at the time of the incident, they had only been an officer for two months and was being supervised by a field training officer.

The trial court admitted into evidence the recording of Yelanskaya's second 911 call. The State authenticated the recording based on Yelanskaya's testimony.[3] While defense counsel

---

[3] *See State v. Jackson*, 113 Wn. App. 762, 769, 54 P.3d 739 (2002) (holding "that in proper circumstances, a proponent can authenticate a tape recording with conversation on it by calling a witness who has personal knowledge of the original conversation and the contents of the tape; who testifies that the tape accurately portrays the original conversation; and who identifies each relevant voice heard on the tape.").

initially objected to the foundation of the recording, after the State's offer of proof, defense counsel had no objections to the recording's foundation. Zimin does not assign error to the trial court's decision to admit this exhibit and, at trial, defense counsel did not seek a limiting instruction telling the jury that the exhibit could be considered only for limited purposes.

During closing arguments, defense counsel noted that only three minutes spanned Yelanskaya's first and second 911 calls and then argued that it was not possible for Yelanskaya's version of events to have occurred in that period of time. On rebuttal, the State argued:

> Defense counsel makes a big deal of this time line. The time line being that 12:49 911 call, 12:52 911 call. Okay. So we got that information from testimony from law enforcement officers. Admittedly [the responding officer] seemed to be struggling a little bit going through the CAD. And we had somebody who was a trainee when this happened testify to this time line.
> The good news is we have the source, and it's in evidence.

3 Rep. of Proc. (RP) (Feb. 2, 2023) at 1032. The State then played the recording of the second 911 call and noted that it announced the following at the beginning of the recording: "October 31, 2020. 13:06:09." 3 RP (Feb. 2, 2023) at 1032-33.

The State addressed "one of the principle arguments of defense counsel" regarding the timing between the 911 calls by contending that the recorded statement from the second 911 call increased the timing between the two calls. 3 RP (Feb. 2, 2023) at 1033-34. The State argued, "[Defense counsel's] big thing was it's impossible in this three minute time line. So now that we've cleared that, does their argument still hold weight? . . . I would argue [14 more minutes] is plenty of time." 3 RP (Feb. 2, 2023) at 1033.

Zimin did not object to the State's argument. Additionally, the trial court instructed the jury that the evidence in the case consisted of the testimony and exhibits at trial, not the lawyers'

statements. It instructed the jury to "disregard any remark, statement, or argument that is not supported by the evidence" and they were the sole judges of witnesses' credibility. CP at 80.

The jury found Zimin guilty of first degree burglary and felony violation of a court order. The jury entered special verdicts, finding that both crimes were domestic violence and aggravated domestic violence offenses. Specifically, the jury found that Zimin and Yelanskaya were family or household members and that the offenses were committed within the sight or sound of at least one of their minor children.

At sentencing, the State argued that Zimin's offender score for the burglary offense was 5 points. Zimin disagreed with that offender score, noting that the last document they received from the State calculated Zimin's score in March 2021 to be 4 points and arguing that Zimin's score should be 4 points. Zimin made no argument that the trial court could not find the facts underlying Zimin's offender score nor did Zimin argue that the jury had to make such determinations.

When the trial court asked the State how it calculated Zimin's offender score to be 5 points, the State explained that 1 point came from Zimin's felony DUI conviction, 2 points came from Zimin's "felony harassment domestic violence" conviction, and 2 points came from Zimin's other current offense. 3 RP (Feb. 27, 2023) at 1092.; RCW 9.94A.525(8), (10), (21)(a). The State did not add 1 point for Zimin committing the current offenses while on community placement. The trial court found Zimin's offender score to be 5 points.

The judgment and sentence noted Zimin's criminal history as "attached." CP at 119. Appendix 2.2 of the judgment and sentence was an agreed declaration of criminal history. It listed several convictions, including "Felony Harassment (Death Threats)—Domestic Violence,"

occurring in 2018, and, "Felony Driving Under The Influence," occurring in 2019.[4] CP at 129 (some capitalization omitted). The declaration indicated that the felony harassment conviction was 2 points and the felony driving under the influence conviction was 1 point. Additionally, the declaration had a checked box next to the following: "The defendant committed a current offense while on community placement (adds [1] point to score). RCW 9.94A.525."[5] CP at 129-30. The declaration was dated the same day as the sentencing hearing and was signed by Zimin and his counsel along with the State.

Finding "substantial and compelling reasons that justify an exceptional sentence," the trial court imposed an exceptional sentence above the standard range for Zimin's burglary offense. CP at 119. In noting its finding, the trial court specifically acknowledged that aggravating factors were found by the jury through special interrogatory. The trial court also found that Zimin was indigent because he had an annual income, after taxes, of 125 percent or less of the current federal poverty level, but the trial court ordered the payment of a $500 VPA and $100 DNA collection fee. RCW 10.101.010(3)(a)-(c).

Zimin appeals.

---

[4] The felony driving under the influence conviction listed a sentence date chronologically before the crime date. We presume that the sentence date contains a typographical error and meant a sentence date after the crime date.

[5] Former RCW 9.94A.525(19) requires the court to add 1 point to a defendant's offender score if the present conviction is for an offense committed while the offender was under community custody, which, for the subsection, includes community placement or postrelease supervision as defined in chapter 9.94B RCW.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Zimin argues the prosecutor committed misconduct when they relied on the recording of the second 911 call's time statement to argue that the time between the two 911 calls was longer than what the State's witness testified. We disagree.

A. *Legal Principles*

When an appellant fails to object to a prosecutor's statements at trial, like Zimin did, they waive a prosecutorial misconduct claim based on those statements unless they show (1) the prosecutor's comments were improper, (2) the comments were both flagrant and ill-intentioned, (3) a curative instruction could not have obviated the effect of the improper comments, and (4) it was substantially likely the misconduct affected the verdict. *State v. Gouley*, 19 Wn. App. 2d 185, 201, 494 P.3d 458 (2021).

In determining whether a defendant's prosecutorial misconduct claim requires reversal of their conviction, we review the prosecutor's statements in the context of the entire case. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). Prosecutors have "wide latitude to argue reasonable inferences from the evidence," but they must "'seek convictions based only on probative evidence and sound reason.'" *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (quoting *State v. Casteneda-Perez*, 61 Wn. App. 354, 363, 810 P.2d 74 (1991)). A prosecutor "can certainly argue that the evidence does not support the defense theory" so long as they do not "impugn the role or integrity of defense counsel." *State v. Lindsay*, 180 Wn.2d 423, 431, 326 P.3d 125 (2014).

B.       *Zimin Fails To Show Impropriety of the Prosecutor's Argument*

To succeed in his claim, Zimin must show the prosecutor's argument was improper. *Gouley*, 19 Wn. App. 2d at 201.  Zimin argues that the prosecutor's argument in rebuttal was improper because the prosecutor urged the jury to rely on "the unauthenticated and unexplained time stamp at the beginning of the second 911 call."  Br. of Appellant at 9.  Despite the recording being admitted and Zimin assigning no error to its admission, Zimin contends that the prosecutor should have understood that admission of the recording only established that the recorded voice was Yelanskaya's and "nothing more" such as the accuracy of the recording's stated time.  Br. of Appellant at 10.  Zimin also contends that the prosecutor's statement required the jury to disbelieve the State's witness—the officer—who testified to the CAD log times.

But Zimin points to no facts indicating that the trial court's admission of the recording was limited to only Yelanskaya's statements in the call or that defense counsel requested such limiting instruction for the recording.  Nor does Zimin assign error to the trial court's decision to admit the recording.

Additionally, considering the context and circumstances of the prosecutor's statements, the prosecutor's argument was merely a rebuttal to defense counsel's argument that three minutes was not long enough for the alleged events to have occurred.  The prosecutor was allowed to argue that the admitted evidence did not support the defense theory.  *Lindsay*, 180 Wn.2d at 431.  The prosecutor's rebuttal was also consistent with Yelanskaya's testimony that, about 10 minutes after she returned to her apartment, she heard someone knock on her front door.  Tadzhibayev then forced her way into the apartment and Zimin followed.  With wide latitude to argue reasonable inferences from the admitted evidence, Zimin fails to show that the prosecutor here exercised such latitude in an impermissible way.  *Thorgerson*, 172 Wn.2d at 448.

8

Moreover, the trial court specifically instructed the jury to disregard any remarks or arguments from the prosecutor unsupported by the evidence and instructed the jurors that such statements were not evidence in the case. And we presume that the jury follows a trial court's instructions. *State v. Grisby*, 97 Wn.2d 493, 499, 647 P.2d 6 (1982). Finally, as Zimin did not object to the prosecutor's comments below, he must show that a curative instruction could not have obviated the effect of the improper comments to succeed in his claim. *Gouley*, 19 Wn. App. 2d at 201. Given that an instruction from the trial court could have limited the purposes for which the jury could consider the recording, and the trial court could have told the jury to ignore the challenged argument, Zimin cannot show that a curative instruction on the prosecutor's comments at closing would not have obviated any effect.

Thus, Zimin fails to meet his burden of showing that the prosecutor's argument in rebuttal was improper, and, accordingly, we hold Zimin waived his prosecutorial misconduct claim.

## II. SENTENCING

Zimin challenges the constitutionality of multiple findings made by the trial court at sentencing. First, Zimin claims that the trial court violated his rights under the Sixth and Fourteenth Amendments as well as article 1, section 22 of the Washington Constitution by finding (1) domestic violence was pleaded and proved in a prior conviction, (2) Zimin's prior offenses had not washed, and (3) Zimin was on community custody at the time of the current offense. Zimin also claims that the State failed to provide him with notice of these alleged facts in the charging document. Finally, Zimin argues that the trial court violated his constitutional rights by imposing an exceptional sentence based on its own finding—versus the jury's—that there were substantial and compelling reasons to justify an exceptional sentence.

A.      *Even if Review Related of Zimin's Arguments Regarding His Offender Score Is*

*Warranted, Zimin's Arguments Fail*

For the first time on appeal, Zimin claims the trial court violated his federal and state

constitutional rights to due process and a trial by jury when the trial court, and not a jury, made

certain findings of fact for the purposes of calculating Zimin's offender score. In particular,

Zimin argues that a jury should have determined whether he had a prior conviction where

domestic violence was pleaded and proven, whether certain prior conviction occurred in a

specific time period, and whether he was on community custody at the time of the current

offenses. The State argues that, because Zimin did not object at sentencing and Zimin fails to

show that his claim satisfies RAP 2.5(a)(3), we should decline to consider the merits of Zimin's

arguments. The State also argues that, even if a constitutional violation occurred, it was

harmless beyond a reasonable doubt.

Generally, we do not consider claims raised for the first time on appeal. *State v.*

*Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007); *see* RAP 2.5(a). In other words, "we may

decline to review unpreserved errors." *State v. Clare*, 30 Wn. App. 2d 309, 315, 544 P.3d 1099

(2024) *review denied*, 3 Wn.3d 1011 (2024). Even constitutional rights may be forfeited in

criminal cases through the failure to preserve an error for review. *State v. Lazcano*, 188 Wn.

App. 338, 355, 354 P.3d 233 (2015) ("No procedural principle is more familiar than that a

constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure

to make timely assertion of the right before a tribunal having jurisdiction to determine it.").

Requiring arguments to first be asserted at the trial court fulfills several purposes including

allowing the trial court an opportunity to correct any claimed error and opposing parties the

opportunity to address claimed errors. *Id.* at 356. The prerequisite also aims to minimize the

potential for abuse by a party lying in wait so they may raise the issue after a verdict, serving goals of judicial economy, and ensuring a complete record for appellate review. *Id*.

Despite this general rule, RAP 2.5(a) outlines several circumstances where an appellant can raise an unpreserved error:

> a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.

In his opening brief, Zimin does not address whether any of RAP 2.5(a)'s exceptions apply or that the claimed errors regarding Zimin's offender score are ones that can be raised for the first time on appeal. Because Zimin argues that the trial court violated his constitutional rights by making certain findings of fact in calculating Zimin's offender score, Zimin raises errors he claims rise to "constitutional dimension." *See Kirkman*, 159 Wn.2d at 926 ("Pursuant to RAP 2.5(a)(3), to raise an error for the first time on appeal, the error must be 'manifest' and truly of constitutional dimension."). Notably, the State does not expressly argue that Zimin's fails to raise errors pertaining to a constitutional issue. Instead, the State argues that Zimin makes no attempt to show that his claimed errors are "manifest." Br. of Resp't at 14.

As our supreme court has noted,

> RAP 2.5(a)(3) does not permit all asserted constitutional claims to be raised for the first time on appeal, but only certain questions of "manifest" constitutional magnitude. This court has rejected the argument that all trial errors which implicate a constitutional right are reviewable under RAP 2.5(a)(3), noting that "[t]he exception actually is a narrow one, affording review only of 'certain constitutional questions.'" Exceptions to RAP 2.5(a) must be construed narrowly.

*Kirkman*, 159 Wn.2d at 934-35 (internal citations omitted).

For an error to be "manifest" under RAP 2.5(a)(3), the appellant must show "'actual prejudice.'" *State v. J.W.M.*, 1 Wn.3d 58, 91, 524 P.3d 596 (2023) (internal quotation marks

omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). Demonstrating actual prejudice requires plausibly showing that the asserted error had "'practical and identifiable consequences'" in the proceeding. *Id.* at 91 (quoting *O'Hara*, 167 Wn.2d at 99). "'In determining whether the error was identifiable, the trial record must be sufficient to determine the merits of the claim.'" *Id.* (quoting *O'Hara*, 167 Wn.2d at 99).

Zimin makes no mention of RAP 2.5 in his opening brief. While in his reply brief Zimin argues that "RAP 2.5 is no barrier to this [c]ourt's review," Zimin makes no effort to show that his claimed errors related to the trial court's determination of his offender score had practical and identifiable consequences in his case. Reply Br. at 17. Instead, Zimin makes a series of assertions for why RAP 2.5 does not apply. Zimin contends that he challenges an "unlawful sentence" and presents an argument that the State did not properly prove the facts necessary to establish the sentence, both which Zimin contends may always be challenged on appeal. Reply Br. at 17. He also asserts that his arguments rely on a change in controlling case law material to his case, *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024).

But Washington courts have held that *Erlinger* is limited to the "different occasions" inquiry under the federal Armed Career Criminal Act and does not overrule existing Washington precedent. *State v. Frieday,* 33 Wn. App. 2d 719, 747, 565 P.3d 139 (2025), *review denied*, 5 Wn.3d 1006 (2025), *cert. denied*, 224 L. Ed. 2d 21; *State v. Anderson*, 31 Wn. App. 2d 668, 681, 552 P.3d 803, *review denied*, 3 Wn.3d 1034 (2024). Accordingly, it cannot qualify as a controlling change in case law material to Zimin's case, which did not involve a "different occasions" inquiry.

Next, while Zimin is correct that established case law has held that "illegal or erroneous sentences may be challenged for the first time on appeal," Zimin does not clearly argue that his

sentence itself is necessarily illegal or erroneous. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). Instead, he appears to take issue with the process in determining his offender score which was based, in part, on Zimin's agreement with the State that he at least had an offender score of 3 points based on Zimin's criminal history. The remaining 2 points on Zimin's offender score derived from his other current offense which Zimin does not challenge on appeal. *See* RCW 9.94A.525(21)(a). Given this, Zimin fails to show how his challenge equates to his sentence itself being illegal or erroneous so as to warrant our review of his claims.

Additionally, Zimin's affirmative acknowledgment of his criminal history does not persuade us that our review is warranted. Zimin argues that the State did not properly prove the facts necessary to establish the sentence. Zimin's assertion rests on *State v. Cates'*s holding that the State's burden of proving a defendant's criminal history by a preponderance of the evidence is not satisfied just by a failure to object nor appellate counsel's failure to argue that an offender score calculation was incorrect. 194 Wn.2d 909, 913, 453 P.3d 990 (2019). However, *Cates* notes that waiver can occur if the defense "affirmatively acknowledge[s] the criminal history." *Id*.

For one of the findings Zimin challenges, Zimin affirmatively acknowledged that his criminal history included a felony harassment conviction where domestic violence was proven. With his acknowledgement, the State did not need to prove those facts further, and Zimin waived this challenge to his criminal history. *Id*. And, Zimin had affirmatively acknowledged the facts necessary to determine whether his two prior convictions of felony DUI and felony harassment conviction washed or not. Zimin's felony harassment and felony DUI convictions occurred prior to the sentence in the current appeal. Given those facts, none of the prior offenses could have washed out.

Moreover, based on the record below, there is no indication that the trial court added 1 point based on Zimin being on community custody. The State did not argue that Zimin's offender score should include 1 point for Zimin committing the current offense while on community placement. Instead, the bases for Zimin's offender score were separate from him committing his offense while on community custody. *See* RCW 9.94A.525(8), (10), (21)(a). Thus, the State had no requirement to prove or prove further any of the facts Zimin challenges.

To the extent that Zimin argues that his resulting sentence was illegal or erroneous, his arguments nevertheless fail. Zimin argues that the trial court violated his right to trial by jury and right to due process of law because, in determining Zimin's offender score, the trial court made findings that should have been proven beyond a reasonable doubt before a jury. Zimin acknowledges that the trial court may find "'the fact'" of a prior conviction. Br. of Appellant at 15 (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 246-47, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998)). However, he asserts that the trial court's offender score finding exceeded finding the fact of a prior conviction because the trial court determined whether domestic violence was pleaded and proved in a prior conviction, whether prior offenses washed or not, and whether Zimin was on community custody at the time of the current offense. Zimin's argument fails.

Our supreme court in *State v. Jones* held that "Washington's sentencing courts must be allowed as a matter of law to determine not only the fact of a prior conviction but also those facts 'intimately related to [the] prior conviction' such as the defendant's community custody status." 159 Wn.2d 231, 241, 149 P.3d 636 (2006) (quoting *United States v. Moore*, 401 F.3d 1220, 1225 (10th Cir. 2005)). The court held that such determinations are properly made by the sentencing judge and not a jury "because community custody is directly related to and follows from the fact

of a prior conviction and because the attendant factual determinations involve nothing more than a review of the nature of the defendant's criminal history and the defendant's offender characteristics." *Jones*, 159 Wn.2d at 234.

Zimin argues that, under *Erlinger*, the trial court's finding that Zimin's 2018 conviction for felony harassment was a domestic violence offense, its determination that the prior convictions had not washed, and a finding that Zimin committed the current offense while on community custody fell outside of the permitted findings a sentencing court may make. However, *Erlinger*, as discussed above, does not overrule *Jones*. *See Frieday,* 33 Wn. App. 2d at 747; *Anderson*, 31 Wn. App. 2d at 681. Thus, all of Zimin's arguments nevertheless fail.

Zimin fails to show the RAP 2.5 does not apply. Additionally, Zimin fails to argue that his alleged constitutional errors caused actual prejudice in his case through having identifiable and practical consequences. Accordingly, we conclude that Zimin fails to show that his unpreserved arguments related to the trial court's calculation of his offender score warrant our review under RAP 2.5(a) and, thus, we decline to reach them. Even if we were to reach Zimin's arguments, they fail.

B.     *Zimin Fails to Show That the Same Facts Needed to Be Alleged in the State's Charging Document*

Separate from his claim that the jury was required to make certain offender score findings under the constitution, Zimin also argues that the State had to include such allegations in its charging document. We disagree.

To be constitutionally sufficient, a charging document must set forth "'all essential elements of the crime, statutory or otherwise, and the particular facts supporting them.'" *State v. Derri*, 199 Wn.2d 658, 691, 511 P.3d 1267 (2022) (quoting *State v. Hugdahl*, 195 Wn.2d 319,

15

324, 458 P.3d 760 (2020)). "'Essential elements' are 'the facts that the State must prove beyond a reasonable doubt to establish that the defendant committed the charged crime.'" *Derri*, 199 Wn.2d at 691 (quoting *State v. Recuenco*, 163 Wn.2d 428, 434, 180 P.3d 1276 (2008)).

Zimin relies on *Recuenco* to argue that the State had to provide Zimin with notice of the challenged facts underlying his offender score. However, his reliance is misplaced. While *Recuenco* held that the State was required to provide Zimin notice that it was alleging a sentencing enhancement, the case does not stand for the proposition that the State also needs to allege facts underling a defendant's offender score in the charging document. *Recuenco*, 163 Wn.2d at 440-41. Distinct from an offender score which is a component of determining the standard statutory sentence, a sentence enhancement "describes an increase beyond the maximum authorized statutory sentence." *Id.* at 434. It is with this function that the court in *Recuenco* stated that a sentence enhancement "becomes the equivalent of an 'element' of a greater offense than the one covered by the jury's guilty verdict," requiring the State to allege such information. *Id.* (internal quotation marks omitted) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

*Recuenco* does not support Zimin's argument that the challenged facts underlying his offender score are "elements" required to be alleged by the State in its charging document. And Zimin fails to point to any other authority supporting his position. Accordingly, we hold that Zimin's argument fails. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."); *see also* RAP 10.3(a)(6).

C.      *Imposing An Exceptional Sentence Did Not Violate Zimin's Constitutional Rights*

Zimin argues that the trial court violated his Sixth and Fourteenth Amendment rights under the United States Constitution by imposing an exceptional sentence without the jury finding "substantial and compelling reasons" justifying the exceptional sentence.  Br. of Appellant at 27-28.  We disagree.

We review whether the imposition of an exceptional sentence violates a defendant's Sixth and Fourteenth Amendment rights de novo as it is a question of law.  *State v. Alvarado*, 164 Wn.2d 556, 563, 192 P.3d 345 (2008).  The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ."  In conjunction with the due process clause of the Fourteenth Amendment, this Amendment gives a defendant the right to have every element of a crime proved to a jury beyond a reasonable doubt.  *Hurst v. Florida*, 577 U.S. 92, 97, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016).

Under the Sentencing Reform Act of 1981 (SRA), a trial court can impose an exceptional sentence—a sentence outside of the standard range—if it determines that "there are substantial and compelling reasons justifying an exceptional sentence."  RCW 9.94A.535.[6]  Whenever the trial court imposes an exceptional sentence, "the court shall set forth the reasons for its decision in written findings of fact and conclusions of law."  RCW 9.94A.535.  In its list of "Aggravating Circumstances—Considered by a Jury—Imposed by the Court," RCW 9.94A.535 includes an aggravating factor for when the current offenses involved domestic violence, as defined in RCW

---

[6] This statute was amended, effective July 27, 2025.  However, we cite to the current version of the statute as the amendment did not change the portions relevant to the issue before us. *Compare* LAWS OF 2025, ch. 90, § 1, *with* LAWS OF 2019, ch. 219, § 1.

10.99.020,[7] and "[t]he offense occurred within sight or sound of the victim's or the offender's minor children." (3)(h) and (3)(h)(ii).

If a defendant does not waive their right to a jury, facts supporting an aggravated sentence, other than a prior conviction, must be proved to a jury beyond a reasonable doubt and be found by that jury unanimously and by a special interrogatory. RCW 9.94A.535; RCW 9.94A.537; *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) ("'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'") (quoting *Apprendi*, 530 U.S. at 490.). Any fact that "'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict' is an 'element' that must be submitted to a jury." *Hurst*, 577 U.S. at 97 (alteration in original) (quoting *Apprendi*, 530 U.S. at 494).

Zimin argues that the trial court violated his constitutional rights in finding that substantial and compelling reasons justified the increased punishment because such is a factual determination. Zimin contends that Washington's sentencing scheme under the SRA requires the trial court to find factually that "substantial and compelling reasons" exist before imposing an exceptional sentence. Zimin relies on the Florida scheme at issue in *Hurst*. However, Zimin's reliance on *Hurst* is misplaced.

*Hurst* addressed Florida's death penalty sentencing scheme for capital felonies. 577 U.S. at 95-96. In their scheme, the jury provided an "advisory sentence" a life or death sentence

---

[7] The definition of "domestic violence" includes first degree burglary or violation of a no-contact order committed by one family or household member against another family or household member. RCW 10.99.020(4)(iv) and (xviii).

without stating the factual basis for its recommendation. *Hurst*, 577 U.S. at 95-96. Although the trial courts had to give great weight to the jury's recommendation, the trial court exercised independent judgment in considering whether aggravating or mitigating factors existed. *Id.* at 96. The Court held that this sentencing scheme was unconstitutional because it allowed judges, rather than juries, to independently determine whether aggravating circumstances existed so to impose a death sentence. *Id.* at 98-100.

Florida's sentencing scheme in *Hurst* is distinguishable from Washington's SRA. Unlike Florida's scheme, Washington's scheme requires the jury to first find the existence of aggravating factors beyond a reasonable doubt. RCW 9.94A.535; RCW 9.94A.537(6). Only after a jury makes those factual findings does a trial court then consider whether those factors are "substantial and compelling" to justify an exceptional sentence as a matter of law. RCW 9.94A.535; RCW 9.94A.537(6); *State v. Sage*, 1 Wn. App. 2d 685, 708-09, 407 P.3d 359 (2017). In contrast to the judges in Florida's sentencing scheme, Washington judges do not determine the existence of aggravating factors when a defendant has not waived their right to a jury. Therefore, Zimin's reliance on *Hurst* is misplaced.

Additionally, as Zimin recognizes in his briefing, Division One of this court previously rejected a similar argument to that he raises here in *State v. Sage*, 1 Wn. App. 2d 685, 407 P.3d 359 (2017). Sage argued that the trial court violated his constitutional right to a jury trial by imposing an exceptional sentence based on the trial court concluding that substantial and compelling reasons existed, justifying imposing the sentence. *Id.* at 689, 707. This court stated:

> Washington cases recognize that once the jury by special verdict makes the factual determination whether aggravating circumstances have been proved beyond a reasonable doubt, "[t]he trial [court] [is] left only with the legal conclusion of whether the facts alleged and found were sufficiently substantial and compelling to warrant an exceptional sentence."

19

*Id.* at 708 (alternations in original) (quoting *State v. Suleiman*, 158 Wn.2d 280, 290-91, 143 P.3d 795 (2006)). Division One then held that determinations that involve applying the law to facts already found by the jury are not factual findings but legal conclusions and, thus, do not require further consideration by the jury. *Id.* at 708-710.

Zimin asks us to depart from *Sage* and *State v. Johnson*,[8] which follows *Sage*; however, we decline to do so here. Both our supreme court and the United States Supreme Court denied review/certiorari of *Sage* as well as *Johnson*. *Sage*, 191 Wn.2d 1007 (2018); 586 U.S. 1197 (2019); *Johnson*, 2 Wn.3d 1035; 145 S. Ct. 771 (2024). Additionally, *Sage* relies on and quotes a controlling decision from our supreme court, which has also held that "'whether a particular aggravating factor is supported by the record is a question of fact, while the question of whether the found factors are sufficiently substantial and compelling *is a matter of law*.'" 1 Wn. App. 2d at 708 & n.80 (emphasis added) (quoting *Suleiman*, 158 Wn.2d at 290-91 & n.3). The trial court decision Zimin challenges here has thus been held by our supreme court to be a matter of law within the trial court's, and not the jury's, purview. Unless our supreme court reverses its prior holding, we will not ignore this precedent.

Here, the trial court complied with the statutory and constitutional requirements. By special verdicts, the jury found an aggravating factor beyond a reasonable doubt for both of Zimin's offenses. Specifically, the jury found that Zimin committed both offenses against either a family or household member and within the sight or sound of at least one of their minor children. RCW 9.94A.535(3)(h), (h)(ii); RCW 10.99.020(4). Only thereafter did the trial court

---

[8] 29 Wn. App. 2d 401, 424, 540 P.3d 831 (2024), *review denied*, 2 Wn.3d 1035 (2024), *cert. denied*, 145 S. Ct. 771 (2024).

then determine that, based on these findings, "substantial and compelling reasons" justified imposing an exceptional sentence, as required by RCW 9.94A.535 and RCW 9.94A.437. As this determination was a legal conclusion, the trial court could make it without violating Zimin's constitutional rights. *Sage*, 1 Wn. App. 2d at 708.

Therefore, we hold the trial court did not violate Zimin's constitutional rights in its imposition of an exceptional sentence.

### III. LEGAL FINANCIAL OBLIGATIONS

Zimin argues the VPA and DNA collection fee should be stricken. The State concedes these LFOs should be stricken. We accept the State's concession.

Amended RCW 7.68.035(4)—which applies to Zimin because this case is on direct appeal—requires the trial court to not impose a VPA if the court finds at the time of sentencing that the defendant is indigent as defined in RCW 10.01.160(3). *State v. Matamua*, 28 Wn. App. 2d 859, 878-79, 539 P.3d 28 (2023), *review denied* 1 Wn.3d 1033 (2024). At sentencing, the trial court found that Zimin was indigent because he had an annual income, after taxes, of 125 percent or less of the current federal poverty level. RCW 10.101.010(3)(a)-(c). Given the State's concession and because the trial court made the specific indigency finding that is necessary under RCW 10.01.160(3), we reverse the VPA and remand to the trial court to strike the VPA.

Former RCW 43.43.7541(1) required the trial court to impose a DNA collection fee unless the State has already collected the offender's DNA as the result of a prior conviction. However, effective July 1, 2023, the legislature eliminated this provision and provided that, upon motion by an offender, the court must waive any DNA fee imposed prior to the effective date. LAWS OF 2023, ch. 449, § 4. Therefore, we accept the State's concession, reverse the DNA collection fee, and remand to the trial court to strike the DNA collection fee.

No. 59518-4-II

## CONCLUSION

We affirm Zimin's judgment and sentence but reverse the VPA and DNA collection fee and remand to the trial court to strike them from Zimin's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J._
Che, J.

We concur:

_Maxa, J._
Maxa, P.J.

_Glasgow, J._
Glasgow, J.